656 So.2d 1048 (1995)
Kathleen EARLES
v.
Omar INCHAUSTI, et al.
No. 95-C-269.
Court of Appeal of Louisiana, Fifth Circuit.
May 10, 1995.
Barbara G. Haynie, Metairie, for relator.
Wayne W. Yuspeh, Metairie, for respondent.
Before KLIEBERT, C.J., and WICKER and GOTHARD, JJ.
*1049 PER CURIAM.
This writ application arises from a suit filed on behalf of Kathleen Earles, plaintiff/relator, against Omar Inchausti, Lonnie Villerman, Lorrie Doe (an unknown party), XYZ insurance company, Lafayette Auto Insurance Company, and Louisiana Insurance Guaranty Association (LIGA) as successor for the insolvent insurers Old Hickory Insurance Company[1] and Liberty Lloyds Insurance Company. Inchausti was sued as the alleged driver of the vehicle that struck Earles' vehicle in the rear. Villerman and Doe were sued as the alleged owners of the Inchausti vehicle. Earles sued Liberty Lloyds on the basis this company insured her son's separately owned vehicle. The son's vehicle was not involved in the accident. LIGA, as successor of Liberty Lloyds, (defendant/respondent), filed a motion for summary judgment. It denied coverage based on an exclusion in the policy which it contends is clear and unambiguous and not against public policy. Earles opposed the motion arguing the policy is ambiguous. She also argued that to exclude coverage would violate the public policy enunciated in Howell v. Balboa Ins. Co., 564 So.2d 298 (La.1990). The trial judge denied the motion for summary judgment. LIGA has filed this writ application. On April 5, 1995 this court granted a writ of review. After full examination of the record we grant the writ and reverse.
The facts are undisputed. Earles and her son, Jerry Rock, reside in the same household. She and her son each own a separate vehicle. The vehicles are insured by two different insurers. At the time of the accident Earles was driving her own car. Her son's car was not involved in the accident.
LIGA filed a motion for summary judgment in which it contends Earles does not qualify as an insured under the policy issued in favor of her son. It relies on the following provisions excluding coverage.
Part IVProtection Against Uninsured Motorists provides:
Definitions. The definitions under Part I [liability coverage], except the definition of "insured," apply to Part IV, and under Part IV:
"insured" means:
(a) the named insured and any relative ...
The definition of "relative" is given in Part I, the liability section, as follows:
"relative" means a person related to named insured by blood, marriage or adoption who is a permanent or temporary resident of the same household, provided neither such person nor his spouse owns a private passenger automobile.
Despite respondent's assertions to the contrary we find no ambiguity in excluding those relatives who own a private passenger automobile. Part IV clearly includes the definition of "relative" given in Part I. The only definition which varies from Part I is the definition of "insured." The exclusion contained in the definition of "relative" applies to Earles.
Earles also opposed the motion on the basis the Louisiana Supreme Court has held "UM coverage cannot be made dependent upon a relationship with an insured vehicle." Earles cited Howell, supra for that proposition. She correctly notes the Howell court held at 301:
We expressly hold that UM coverage attaches to the person of the insured, not the vehicle, and that any provision of UM coverage purporting to limit insured status to instances involving a relationship to an insured vehicle contravenes LSA-R.S. 22:1406(D). In other words, any person who enjoys the status of insured under a Louisiana motor vehicle liability policy which includes uninsured/underinsured motorist coverage enjoys coverage protection simply by reason of having sustained injury by an uninsured/underinsured motorist.
*1050 Howell, however, has been legislatively overruled by Acts 1988, No. 203, Sec. 1, effective September 9, 1988 when La.R.S. 22:1406 was amended. La.R.S. 22:1406 was amended to add subparagraph (D)(1)(e):
(e) The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including death of an insured resulting therefrom, while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy. This provision shall not apply to uninsured motorist coverage provided in a policy that does not describe specific motor vehicles.
Accord. Sandoz v. State Farm Mut. Auto. Ins. Co., 620 So.2d 441 (La.App. 3rd Cir. 1993).
In Sandoz Mrs. Sandoz was operating a vehicle owned by herself and Mr. Sandoz. Their son was a passenger in the vehicle when it slid on an icy highway and overturned. Mr. Sandoz sued Mrs. Sandoz and State Farm Insurance Company individually and on behalf of the minor son. He sought to collect from two State Farm policies issued on two separate vehicles they owned, one of which was not in the accident.
Although the Sandozes stipulated to the terms of the exclusion in the policy they nonetheless cited Howell, supra, and other cases which held that a policy which seeks to limit UM coverage based on a relationship of an insured to a vehicle was against public policy. The Sandoz court explained at 444:
As noted in the 1992 Supplement to 15 Louisiana Civil Law Treatise, Insurance Law and Practice, Section 123, p. 56, 57, and footnote 13.10, Act 203 of 1988, which added subparagraph D(1)(e) to LSA-R.S. 22:1406, legislatively overruled cases such as those on which plaintiffs rely.
In Howell, supra, the accident occurred in 1984, prior to the amendment. In the case at bar the accident occurred September 6, 1990. The policy at issue was effective from May 27, 1990 to September 27, 1990. Thus, the amendment would apply to the instant case.
We find Galliano v. State Farm, 606 So.2d 580 (La.App. 5th Cir.1992), controlling. In Galliano Mr. and Mrs. Galliano sued State Farm individually and on behalf of their deceased son. Their son was killed when the vehicle he was driving was struck head-on by a third party. He was driving his own automobile at the time of the accident. His automobile was insured by Old Hickory Insurance Company. Under that policy he waived UM coverage. The adult son resided with his parents. His parents owned three other automobiles which carried UM coverage by State Farm. They sued State Farm seeking to obtain UM coverage under one of these policies. We concluded there was no UM coverage in the State Farm policies and reasoned as follows at 582:
La.R.S. 22:1406(D)(1)(e), added by a 1988 amendment, became effective September 9, 1988 and is applicable to the accident here, which occurred on October 5, 1989. The statute is clear and provides that UM coverage does not apply to injuries of "an insured while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a claim is made ..." This clearly covers the case before us, where Joseph W. Galliano, Jr. was injured while driving an automobile which he owned and which was not listed in the State Farm policy.
Here Earles was injured while driving an automobile she owned which was not listed in her son's policy. We conclude that she is excluded from UM coverage under the clear terms of the policy. We also determine that the exclusion is not prohibited under La.R.S. 22:1406(D)(1)(e). Furthermore, the restriction in the policy is consistent with the statutorily imposed exclusion in La.R.S. 22:1406(D)(1)(e).
For the foregoing reasons, the application is granted. The judgment of the district court is reversed and judgment is hereby rendered in favor of Louisiana Insurance Guaranty Association as successor of Liberty Lloyds Insurance Company, dismissing it from the suit. Costs are assessed against the plaintiff/respondent.
*1051 WRIT GRANTED; JUDGMENT REVERSED AND RENDERED.
NOTES
[1] LIGA filed a motion for summary judgment on the basis the Old Hickory policy issued to Earles did not provide underinsured/uninsured motorist coverage. Earles filed a cross-motion for summary judgment urging there was coverage. On April 26, 1993 the trial judge granted LIGA's motion and denied Earles' motion. LIGA was dismissed as Old Hickory's successor.