739 So.2d 330 (1999)
Terry DARDAR and Sharon Dardar
v.
PRUDENTIAL PROPERTY & CASUALTY INSURANCE CO.
No. 98 CA 1363.
Court of Appeal of Louisiana, First Circuit.
June 25, 1999.
*331 Allen J. Borne, Franklin, for Plaintiffs/ Appellants, Terry Dardar and Sharon Dardar.
John A. Keller, Covington, for Defendant/ Appellee, Prudential Property & Casualty Insurance Co.
Maurice P. Mathieu, Houma, for Defendant/ Appellee, State Farm Mutual Automobile Insurance Company.
Before: CARTER, C.J., SHORTESS, and WHIPPLE, JJ.
CARTER, C.J.
This appeal arises from the trial court's determination that the uninsured/underinsured (UM) selection of lower limits/rejection form used by State Farm Mutual Automobile Insurance Company (State Farm) was invalid, and the plaintiff's own UM policy did not cover him at the time of the accident.

FACTS
On October 7, 1991, Terry Dardar (plaintiff) was driving a 1987 Isuzu pickup *332 truck owned by his employer, Master Electric Service, Inc., when he was struck by a vehicle driven by Newlin Robinson. At the time of the accident, plaintiff was traveling home from work to eat lunch. Plaintiff settled with Robinson's insurance carrier, Allstate Insurance Company, for the policy limits of $50,000.00.
The vehicle plaintiff was driving was insured by a commercial auto insurance policy issued by State Farm. The policy provided liability coverage in the amount of $500,000.00 per person and $500,000.00 per accident. James Robert, the president of Master Electric, signed a UM selection/rejection form on October 5, 1989. This form was intended to reduce the amount of UM coverage to $100,000.00 per person and $300,000.00 per accident. Plaintiff settled with State Farm for $90,000.00. At the time of the accident, plaintiff also carried a personal auto insurance policy issued by Prudential Property and Casualty Insurance Company (Prudential).
The parties stipulated that Newlin Robinson was the cause of the accident; that the subject accident was the cause of plaintiffs injuries; and that plaintiffs damages were at least $250,000.00. Further, the parties stipulated that if a judgment was rendered holding that State Farm's UM selection/rejection form was valid and that Prudential's policy provides UM coverage to plaintiff, Prudential would pay its policy limit of $100,000.00.
On April 5, 1995, the trial court entered judgment finding that State Farm's UM selection/rejection form was valid and that Prudential's policy provided UM coverage. Pursuant to the stipulation, the trial court awarded damages to plaintiff in the amount of $100,000.00. Prudential appealed and this court, in Dardar v. Prudential Property and Casualty Insurance Co., 95-1574 (La.App. 1st Cir.4/4/96); 672 So.2d 298, vacated and remanded the matter to the district court on the basis that State Farm was an indispensable party because the validity of State Farm's selection of lower UM limits was at issue. Plaintiff then amended and supplemented his petition to add State Farm as a defendant. Plaintiff and State Farm settled shortly thereafter for an additional $50,000.00, and State Farm was dismissed as a party defendant. On October 9, 1997, the parties resubmitted the matter of insurance coverage to the trial court pursuant to LSA-C.C.P. art. 1562 D.
By judgment dated February 26, 1998, the trial court found that State Farm's UM selection/rejection form was ambiguous and therefore invalid, and that because plaintiff was operating a vehicle which was furnished and/or available for his regular and/or frequent use, he did not meet the definition of an insured under the Prudential policy, and is not covered by the UM coverage in his Prudential policy. Plaintiff appeals the ruling of the trial court.

DISCUSSION
The first issue raised by plaintiff is whether the trial court erred in finding the UM waiver regarding the State Farm policy to be invalid.
LSA-R.S. 22:1406 D(1)(a)(i-ii) provides that uninsured motorist coverage exists in amounts not less than the limits of bodily injury liability unless an insured rejects in writing the coverage or selects lower limits. The object of the UM statute is to promote recovery of damages for innocent victims by making UM coverage available for their benefit as the primary protection when the tortfeasor is without insurance and as additional or excess coverage when the tortfeasor is inadequately insured. Tugwell v. State Farm Insurance Co., 609 So.2d 195, 197 (La.1992). This object is accomplished by making UM coverage available for the victim's benefits as primary protection against the inadequately insured tortfeasor. Holbrook v. Holliday, 93-1639, p. 4 (La.App. 3rd Cir.6/1/94); 640 So.2d 804, 807, writ denied, 94-1735 (La.10/7/94); 644 So.2d 642.
It is well settled that an insurer must place the insured in a position to *333 make an informed rejection of UM coverage. Tugwell, 609 So.2d at 197. In other words, the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage. Tugwell, 609 So.2d at 197.
In order for there not to be UM coverage, "the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as a specific date in the particular policy issued or to be issued by the insurer." Degruise v. Houma Courier Newspaper Corp, 94-2386, pp. 12-13 (La.App. 1st Cir.6/23/95); 657 So.2d 580, 588, affirmed as amended, 95-1863 (La.11/25/96); 683 So.2d 689. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. If rejection of UM is ambiguous, it is ineffective, regardless of the parties' intent. If the rejection is unambiguous, but not in proper form, it is also ineffective. Degruise, 657 So.2d at 588. Therefore, unless the insured's expression of his desire to reject or select lower limits of uninsured motorist coverage meets the formal requirements of law, the expression does not constitute a valid rejection. Degruise, 657 So.2d at 588.
After reviewing the form in the present case, we find that it fails the "clear and unmistakable" requirement of Tugwell. The form uses the following phrase, "I acknowledge and agree that I have the right to be provided with Uninsured Motor Vehicle Coverage in amounts not less than the limits of my automobile bodily injury liability insurance and: ...."[1] We note the ambiguity of the words "to be provided with" implies that the customer is not automatically provided with UM coverage regardless of whether he or she would be required to pay higher premiums, but that the customer has to do something to receive what he or she is entitled to by law. Holbrook, 640 So.2d at 808; see also Anderson, 642 So.2d at 215.
Further, we note that "and:" at the end of the introductory sentence and before the listed options could be interpreted two ways. Reading the introductory paragraph with the options listed, one interpretation would be the insured is provided only with limits less than the limits for bodily injury liability coverage. A second interpretation is that the introductory sentence stands alone as a third option which would be selected by the insured simply by signing the form without marking any of the boxes. This ambiguity is caused by State Farm's structure of the form, and there is no need to resort to extraneous evidence to indicate what Mr. Roberts' intent was. Anderson, 642 So.2d at 215.
Given the determination that the form used by State Farm is ambiguous, we agree with the trial court that the selection of lower UM limits was invalid. Thus, State Farm's UM limits are $500,000.00.
The case before us reveals that the Prudential policy does not cover the accident at issue because the truck plaintiff was driving was not an insured vehicle according to the terms of the policy. The Prudential policy defines a non-owned car as "a car which is not owned by, registered in the name of or furnished or available for the regular or frequent use of you or a household resident." In other words, if a vehicle is available for the regular or frequent use of the plaintiff, it does not meet the definition of a non-owned vehicle and is therefore not covered under the policy.
*334 The deposition testimony of James Roberts, the owner of Master Electric Service, Inc., indicates that the plaintiff was allowed to drive the 1987 Isuzu truck home and back to work because he was on call 24 hours a day. Because the plaintiff was on call at lunchtime, Roberts allowed him to take the vehicle home for lunch. It is undisputed that at the time of his accident, the plaintiff was on his way home from work to eat lunch, which was a permissible use of the truck.
In employment situations, the family automobile policy is not designed to cover an employer's vehicle regularly used by the employee for employment purposes (the employer should cover these risks), or an employer's vehicle regularly used by the employee for personal purposes (the employee should cover these risks at an additional premium if the employer does not cover them). Peyton v. Bseis, 96-0309, pp. 5-6 (La.App. 4th Cir.8/21/96); 680 So.2d 81, 84.
We find there is no ambiguity in the language of the Prudential policy excluding vehicles regularly used or made available for use. Several cases have encountered this type of exception and the language has never been held to be ambiguous. See Peyton, 680 So.2d at 84; Cossé v. Commercial Union Insurance Company, 597 So.2d 84, 86-87 (La.App. 4th Cir.), writ denied, 600 So.2d 664 (La.1992); Kerner v. Laballe, 560 So.2d 571, 573 (La.App. 5th Cir. 1990); Lemoine v. Herrmann, 559 So.2d 898, 901 (La.App. 4th Cir.), writ denied, 563 So.2d 1159 (La.1990); Chon v. Allstate Insurance Company, 522 So.2d 690, 692 (La.App. 5th Cir.1988); Nevels v. Hendrix, 367 So.2d 33, 35-37 (La.App. 4th Cir.1978).
Plaintiff relies on the case of Howell v. Balboa Insurance Company, 564 So.2d 298 (La.1990) for the proposition that the "regularly used" exclusionary clause in the instant matter is in violation of Louisiana's public policy in favor of UM insurance. Howell involved a plaintiff who was injured while a guest passenger in an automobile owned and operated by a friend. The policy in Howell provided coverage for a non-owned automobile when "used" by either the insured or a family member. The conflict arose because the Howell plaintiff was not using his friend's vehicle at the time of the accident according to the definition of "use" in the policy. Howell, 564 So.2d at 299-300.
The Howell plaintiff asserted that the restrictive definition of "use" contravened the Louisiana Motor Vehicle Safety Responsibility Law, more specifically LSA-R.S. 32:900, and the UM provisions of LSA-R.S. 22:1406(D). Howell, 564 So.2d at 300.
In Howell, the court stated that:
We expressly hold that UM coverage attaches to the person of the insured, not the vehicle, and that any provision of UM coverage purporting to limit insured status to instances involving a relationship to an insured vehicle contravenes LSA-R.S. 22:1406(D). In other words, any person who enjoys the status of insured under a Louisiana motor vehicle liability policy which includes uninsured/underinsured motorist coverage enjoys coverage protection simply by reason of having sustained injury by an uninsured/underinsured motorist.
564 So.2d at 301-302.
However, we find the language of Howell to be inapplicable because the 1987 Isuzu truck plaintiff was driving at the time of the accident was never an insured vehicle under the Prudential policy. Accordingly, plaintiff's insured status under the Prudential policy is never implicated.
Furthermore, cases such as Earles v. Inchausti, 95-269, p. 3 (La.App. 5th Cir.5/10/95); 656 So.2d 1048, 1050; and Sandoz v. State Farm Mutual Automobile Insurance Co., 620 So.2d 441, 444 (La.App. 3rd Cir.1993), have recognized that Howell was legislatively overruled when LSA-R.S. 22:1406 was amended to add subparagraph (D)(1)(e):

*335 The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including death of an insured resulting therefrom, while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy. This provision shall not apply to uninsured motorist coverage provided in a policy that does not describe specific motor vehicles.
Accordingly, we find there is no merit to the assignment of error that the exclusion violates Louisiana's public policy in favor of UM coverage.

CONCLUSION
For the above and foregoing reasons, we find no error with in the trial court's judgment. The decision of the trial court is affirmed, and all costs of the appeal are assessed against the plaintiffs, Terry and Sharon Dardar.
AFFIRMED.
NOTES
[1] The form used in the present case differs from the form in Anderson v. Allstate Insurance Company, 93-1102 (La.App. 1st Cir.4/8/94); 642 So.2d 208, writ denied, 94-2400 (La.11/29/94); 646 So.2d 404, in that it also offers consumers the option to select UM coverage for bodily injury only and not UM property damage. The inclusion of that option does not change the ambiguity of the form.