IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 8, 2005 Session

# DENNIS R. SHEPHERD v. IGNACIO FREGOZO AND NATIONWIDE MUTUAL INSURANCE CO.

**Appeal from the Circuit Court for Davidson County**
**No. 03C-40      Barbara Haynes, Judge**

---

**No. M2004-00245-COA-R3-CV - Filed June 13, 2005**

---

Appellant, a Metropolitan Nashville police officer was seriously injured in an on-duty automobile accident when Defendant's vehicle crashed into the rear of his patrol car. Defendant was uninsured. Metropolitan Nashville was self-insured and did not provide uninsured motorist coverage for its patrol officers. Plaintiff named Nationwide as a defendant in an effort to recover under the uninsured motorist provision of the policy issued to him insuring his personal vehicle. Nationwide defended under a policy exclusion involving non-insured vehicles made available for his regular use. The trial court granted summary judgment to Nationwide, and we affirm the action of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Jonathan Lavoy Griffith, Jeffrey Shane Roberts, Nashville, Tennessee, for the appellant, Dennis Shepherd.

Parks Tedford Chastain, Michael K. Smith, Nashville, Tennessee, for the appellee, Nationwide Mutual Insurance Co.

## OPINION

There is little factual dispute in this case. On February 4, 2002, Dennis R. Shepherd, a patrol officer with the Metropolitan Police Department since 1996, was on duty and driving his patrol car when he was struck from the rear by an automobile driven by the defendant, Ignacio Fregozo, and seriously injured. The patrol car which Shepherd was operating at the time of the accident was one of a fleet of twelve patrol vehicles maintained by the Department's Hermitage substation for use by patrolmen. These vehicles were assigned at random to various patrolmen, and the records of Metro for the 33 days prior to the accident indicate that Shepherd had used or operated eight of these patrol

cars. Metropolitan Government of Nashville and Davidson County is self-insured and does not maintain uninsured or underinsured motorist coverage as to any of its patrol vehicles.

Nationwide Mutual Insurance Company had issued a policy of automobile insurance to Dennis and Elizabeth Shepherd as to their personal vehicles which was in effect on February 4, 2002. Because Fregozo was uninsured, Shepherd sought recovery from Nationwide under the policy's uninsured motorist provisions. Nationwide filed a motion for summary judgment, relying on various exclusions in its policy with particular reliance on the "regular use" exclusion of other motor vehicles under its uninsured motorist coverage. This exclusion provides:

**USE OF OTHER MOTOR VEHICLES:**

> 3.    (b)    This does not apply to losses involving a motor vehicle:
>
> (1)    Used in the business or occupation of you or a relative. However, it does apply to a private passenger auto used by you, your chauffeur, or your household employees;
>
> (2)    Owned, rented, or leased by an employer or an insured;
>
> . . .
>
> (4)    Furnished to you or a relative for regular use. Furnished for regular use does not include a motor vehicle rented from a rental company for less than twenty-eight (28) days.

The trial court granted the motion for summary judgment based on the "regular use" exclusion. Thereafter, Shepherd took a default judgment against Fregozo and recovered a judgment against him for $250,000 compensatory damages and $100,000 punitive damages. Fregozo neither appeared nor appealed, and following the final judgment, Shepherd appealed as to the summary judgment granted to Nationwide.

Standards governing appellate review on summary judgment are familiar and well-settled. Since only issues of law are presented and no disputed fact questions are involved, review on appeal is *de novo* with no presumption as to the correctness of any findings of the trial court. *Gonzales v. Alman Const. Co.*, 857 S.W.2d 42 (Tenn.Ct.App.1993). The moving party on summary judgment has the burden of showing to the court that there are no disputed material facts creating a genuine issue for trial and that he is entitled to judgment as a matter of law. The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1998); *EVCO Corp. v. Ross*, 528 S.W.2d 20 (Tenn.1975). Issues as to interpretation and application of unambiguous contracts are likewise issues

of law, the determination of which enjoys no presumption of correctness on *de novo* appellate review. *Doe v. HCA Health Services of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn.2001).

The sole issue presented on appeal is "whether the Nationwide 'regular use' uninsured motorist exclusion, under the circumstances of this particular case under consideration, operates to deprive the Plaintiff of the protections required under the Tennessee Uninsured Motorists Statute?"

Uninsured motorist insurance coverage first appeared in Tennessee following the passage of chapter 371 of the Public Acts of 1967. In 1974, our supreme court interpreted the uninsured motorist statute to provide "limited" rather than "broad coverage".

> Under our research there appears to be two theories in regard to offset provisions in policies containing uninsured motorist coverage based on the legislative intent in the enactment of uninsured motorist statutes. The first theory is based on a finding the legislative purpose of such statutes is to provide full coverage up to the policy limits so long as payments under the uninsured motorist coverage, plus any payments received from other sources, do not exceed insured's actual damage. This is termed broad coverage and any offsets in the policies inhibiting such full coverage are held void. The second theory is based on a finding the legislative purpose of such statutes is to provide insured a recovery only up to the statutory minimum required without regard to insured's actual damages, unless such be less than the statutory minimum. This is termed limited coverage and under such, by virtue of set-off provisions in a policy, an insured's statutory minimum coverage can be reduced by amounts received from other sources.
>
> . . .
>
> It results, and we so hold, by enactment of T.C.A. s 56 - - 1152 as a section of our uninsured motorist statutes, it is the legislative purpose to provide an insured motorist a right of recovery under the uninsured motorist provisions of his policy only up to the statutory required minimum (T.C.A. s 56 - - 1148), and provisions in such policies, approved by the Commissioner of Insurance, operating to reduce such coverage where other coverage or benefits are available to the insured arising from accident causing the loss, are valid if such provisions do not operate to deny payments to an insured of less than the statutory minimum.

*Terry v. Aetna Casualty & Surety Co.*, 510 S.W2d 509, 513 (Tenn.1974).

Justice Harbison provided further guidance in *Hill v. Nationwide Mutual Ins. Co.*, 535 S.W.2d 327 (Tenn.1976).

> Authorities accepting the rationale of the case just cited point out that vehicular liability insurance is ordinarily written upon and follows particular

scheduled vehicles.  It is not written upon named individuals, and it is not like general health or accident insurance coverage.  The liability policy covers a scheduled vehicle, and extends its protection, through omnibus clauses, not only to the named insured but to members of his family and other persons using the vehicle with permission, subject to prescribed conditions and exclusions.

Other authorities, holding that exclusions such as that involved in the present case are not valid, have reasoned that uninsured motorist coverage should be analogized to broad personal insurance, and that it should not be geared to or limited by coverage on particular scheduled vehicles.  They emphasize that the statutes speak in terms of "protection of persons" rather than vehicles.

Both lines of authority are supported by cogent reasons.  By statute, uninsured motorist insurance coverage is appended to or made supplemental to vehicular liability insurance, so that the concepts of vehicular coverage do have relevance; on the other hand, the statutes refer to the protection of persons, not vehicles.

Faced with these somewhat mixed concepts, the courts have had to construe statutory language in an attempt to carry out legislative policy.  Each case, in the last analysis, turns upon the terms and provisions of a particular state statute and its language with respect to uninsured motorist coverage.

. . .

The uninsured motorist statutes of most states do not contain provisions similar to those contained in T.C.A. § 56-1152. [Now Tenn. Code Ann. § 56-7-1205.]  In previous cases, this Court has noted the difference in statutory provisions, and has construed T.C.A. § 56-1152 [Now Tenn. Code Ann. § 56-7-1205.] as denoting "a legislative purpose to provide less than broad coverage. *Terry v. Aetna Casualty and Surety Company*, 510 S.W.2d 509, 513 (Tenn.1974).  In the latter case, the Court sustained a policy provision providing an offset against the uninsured motorist coverage for any amount recovered under workmen's compensation.

*Hill*, 535 S.W.2d 327, 330 (Tenn.1976).  (footnotes omitted.)

The precise issue which controls the disposition of this case involves an exclusion for

bodily injury suffered while occupying a motor vehicle:

(a) owned by;
(b) furnished to; or
(c) available for the regular use of;

-4-

you or a relative, but not insured for auto liability coverage under this policy. It also does not apply to bodily injury from being hit by any such motor vehicle.

This standard "regular use" exclusion predates the advent of uninsured motorist coverage, it being born and matured by cases interpreting basically the same exclusionary language as to liability coverage. The Fourth Circuit Court of Appeals provides the readily apparent purpose of the exception, which is standard in automobile liability policies and in policies providing uninsured motorist coverage.

> The great weight of authority is in accord with the interpretation of this provision by Judge Chestnut in Aler v. Travelers Indemnity Co., D.C.Md., 92 F.Supp. 620, 623, where he said:

>> This case involved the construction and application of the so-called "drive other automobiles" clause of the present standard automobile liability policy. The general purpose and effect of this provision of the policy is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to do so . . . .

*Campbell v. Aetna Casualty & Surety Co.*, 211 F.2d 732, 736 (4th Circuit 1954).

Further expositive of the "regular use" exclusion in its applicability to the case at bar are those cases where an employer provides a fleet of vehicles which may be randomly assigned to a particular employee. In *City of Jackson v. Freeman-Howie, Inc.*, 121 So.2d 120, the Supreme Court of Mississippi held:

> The proof clearly shows that insured's employer furnished for the regular use of insured a truck, either one of about ten, although insured did not regularly use any particular one of the fleet of ten trucks. Two or three trips a week were made by insured as driver of one of the ten trucks of his employer, and he made other trips as helper on one of the trucks. It cannot be said that insured's use of the employer's trucks was other than regular use.

> The question narrows to this: Does the term "regular use" in the exclusionary clause refer to one specific automobile? As stated, the obvious purpose of the exclusionary clause is to limit the extension of medical payments coverage to casual or infrequent use of occupancy of automobiles other than the one defined in the policy, in this case the insured's Chevrolet. It is regular use of other automobiles that brings the exclusionary clause into operation, and if insured's employer assigns him one specific automobile for regular use or a number of automobiles, any one of which

-5-

may be assigned for a particular trip, the result is the same. An automobile is furnished insured "for regular use" in either event. We know of no authority holding to the contrary.

*Moore v. State Farm Mutual Automobile Ins. Co.*, 121 So.2d 125, 126-27 (Miss.1960).

While Tennessee courts have not dealt specifically with a case involving the "regular use" exclusion as it relates to uninsured motorist coverage, this Court has made it clear as to liability coverage that the "regular use" exclusion is applicable and enforceable. In *United Servs. Auto Ass'n. v. Couch*, 643 S.W.2d 668 (Tenn.Ct.App.1982) United Services Automobile Association had issued a policy of liability insurance to one Rebecca W. Couch insuring her automobile. Her son, residing in her household, was operating a non-owned vehicle and was involved in a collision. The non-owned vehicle, supplied by the employer of the son, was asserted by the insurance carrier to be a "regular use" vehicle within the meaning of the exclusion. The trial court declared coverage, and on appeal, this Court reversed finding that it was clear that the automobile driven by the son was used by him in his work on a regular basis. This Court said:

> The issue of regularity hinges not so much upon the regularity of the working time of the operator, but upon the regularity with which the vehicle was furnished or available. In the present case, it is uncontroverted that the vehicle was regularly, i.e., constantly, available to the employees of Mr. Canterbury, including William Couch, III, when he was on duty. In this sense, the vehicle was regularly available to Couch within the meaning of the policy exclusion.

> The obvious purpose of the "non-owned vehicle" coverage is to afford protection to the insured on occasions when the insured is temporarily using a vehicle not covered by the policy.

> The obvious purpose of the exclusion under discussion is to prevent abuse of the "non-owned" privilege by unnecessarily burdening the insurer with liability which ought to be covered by other insurance.

*United Servs. Auto. Ass'n v. Couch*, 643 S.W.2d 668, 672 (Tenn.Ct.App.1982).

In sister jurisdictions, a body of law has developed under the "regular use" exclusion as it relates to police vehicles available for regular use to policemen. As in other cases, this body of law started with the exclusion of liability coverage and then expanded into the uninsured motorist coverage. In *O'Brien v. Halifax Ins. Co. of Massachusetts*, 141 So.2d 307, Plaintiff was a police officer employed by Ormond Beach, Florida, and was insured as to his personal automobile by the Defendant insurance company. In his work as a police officer, Plaintiff was expected to and did use whichever one of four city-owned cars was assigned to him. While driving one of such vehicles, he was involved in an accident and sustained various personal injuries. He sued his private insurance company for medical benefits under his policy of insurance. The trial court, applying the "regular

-6-

use" exclusion, directed a verdict for the defendant, and the District Court of Appeals of Florida, relying on *Moore v. State Farm Mutual Ins. Co.*, 121 So.2d 125 (Miss.1950) affirmed the judgment. Said the Court:

> The holding in the Moore case that an exclusionary clause involved in that case, identical to that in the instant case, is not ambiguous when read in conjunction with the general coverage clause, appears to represent the majority opinion in this country, as pointed out by the Louisiana Court of Appeals in an exhaustive discussion of this area of the law in Leteff v. Maryland Casualty Co., 91 So.2d 123 (1956). The only case in which a court has held that such an exclusionary clause is ambiguous seems to be Travelers Indemnity Co. v. Pray, 6 Cir., 1953, 204 F.2d 821. Six years after the last decision was announced, the Louisiana Court in the Leteff case stated that "the interpretation placed upon the exclusion clause by the majority in the Pray case not only stands alone but is in error. The great weight of authority is contra."

> In the state of the evidence adduced at the trial in the instant case, we think that the jury as reasonable men could only have lawfully concluded therefrom that the automobile occupied by the plaintiff at the time of the accident was furnished for his regular use, and hence the injuries he sustained were excluded from the coverage of the policy upon which he is suing. Therefore, the Circuit Court properly directed a verdict in favor of the defendant.

*O'Brien v. Halifax Ins. Co. of Mass.*, 141 So.2d 307, 308 (Fla.Dist.Ct.App.1962)

*Galvin v. Amica Mutual Ins. Co.*, 417 N.E.2d 34 (Mass.App.1980) is a case that on its facts closely parallels the case at bar. Galvin was a Boston police officer who owned a personal vehicle insured by Amica Mutual Insurance Company. His policy included uninsured motorist coverage. While on duty and operating his police cruiser, he was involved in a collision with a stolen motor vehicle and sustained serious personal injuries. He brought suit against Amica under his uninsured motorist coverage, and the insurer denied coverage under the "regular use" exclusion in the policy. The particular cruiser that Galvin was driving was one of a pool of twelve or more Boston police cruisers which could have been assigned to Galvin at random on any given duty shift. The exclusion, under the uninsured motorist clauses of the policy, provided that the insurer would not pay to or for "anyone injured while occupying an auto owned or regularly used by you or a household member, but which is not an auto shown on the coverage selections page."

The trial court entered judgment for the defendant, and the Court of Appeals affirmed. Said the appeals court:

> The question of what constitutes "regular use" of a vehicle within the meaning of a motor vehicle liability insurance policy here arises with respect to the regular use exclusion in the uninsured motorist provision. That coverage, however,

is relatively new. See 12 Couch, Insurance 2d § 45:619 (2d ed. 1964, hereafter cited as Couch). The precedents deal with similar exclusions in other types of motor vehicle coverage. Among these is the so called "drive other cars" provision, the purpose of which is to afford coverage for "occasional or incidental use of other . . . [than vehicles owned by the insured] without the payment of an additional premium, but to exclude the habitual use of other cars, which would increase the risk on the insurer without a corresponding increase in the premium. The policy is not intended to cover the insured against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to use. More specifically, the evident intention of the limitation with respect to other automobiles is to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured." 13 Couch § 45:1052 (1965). The purpose of inserting such an exclusion (as that now before us) in any form of motor vehicle coverage is substantially the same. Thus we regard the decisions with respect to the regular use exclusion in "drive other cars" provisions and in other types of motor vehicle coverage as applicable to the similar regular use exclusion under the uninsured motorist provisions.

The precise question does not appear to have been decided in Massachusetts. It seems to have been tacitly assumed in *Reliance Ins. Co. v. Robertson*, 7 Mass App. ------, 390 N.E.2d 739 (1979), that the uninsured motorist coverage (in the liability policy there discussed insuring the automobile owned by a State police officer) would allow recovery by that officer in circumstances closely similar to those now before us. That case, however, arose under a policy form somewhat different from that now before us. In any event, the point now presented was not there raised or considered. We thus must seek guidance from decisions in other jurisdictions.

Galvin's counsel contends that the language of the regular use exclusion, "an auto . . . regularly used by you," should be taken as referring only to a particular vehicle and not to all the vehicles in a pool of vehicles regularly available to the insured motorist. We do not agree and see no ambiguity in the words used. A heavy majority of the decision elsewhere interpret such words (in closely similar policy language) as treating all motor vehicles in a pool, any one of which is available to the person insured, as within the regular use exclusion. The authorities are collected in 13 Couch §§ 45:1050 to 45:1065, especially §§ 45:1055 and 45:1059 (1965 & Supp.1980). See Annot. 86 A.L.R.2d 937, especially § 7(b).

One decision elsewhere upon the regular use exclusion is very close on its facts to the present case. See *Kenney v. Employers' Liab. Assur. Corp.*, 5 Ohio St.2d 131, 132, 134-135, 214 N.E.2d 219 (1966). There, as in this case, a policeman was injured in one of several cruisers available in a pool. The policeman was not allowed to recover under his own policy. The opinion (at 134-135) said, "[O]n the facts of

-8-

this case, we do not believe that the words 'an automobile . . . furnished for the regular use' of plaintiff are ambiguous or can reasonably be interpreted so as not to describe the cruiser in which plaintiff was riding at the time of his injury . . . . In order to be excluded under this exclusionary clause, an automobile need not be a single particular automobile regularly furnished to the named insured. Thus it is well settled that an automobile will be excluded under such policy provisions although it is only one of a group of automobiles from which an automobile is regularly furnished to the named insured by his employer." To similar effect (as to a pool of police vehicles) are *Commercial Ins. Co. v. Gardner*, 233 F.Supp. 884, 886-888 (E.D.S.C. 1964), and *O'Brien v. Halifax Ins. Co.*, 141 So.2d 307, 308 (Fla.App.1962). Other decisions relating to motor vehicle pools or fleets (closely analogous to those involving police officers) include: *Voelker v. Travelers Indemn. Co.*, 260 F.2d 275, 277-278 (7th Cir.1958); *Farm Bureau Mut. Auto. Ins. Co. v. Marr*, 128 F.Supp. 67, 68-71(D.N.J. 1955); *Bringle v. Economy Fire & Cas. Co.*, 169 N.W.2d 879, 881-884 (Iowa 1979); *Winterwerp v. Allstate Ins. Co.*, 277 Md. 714, 716-721, 357 A.2d 350 (1976); *Moore v. State Farm Mut. Auto. Ins. Co.*, 239 Miss. 130, 133-135, 121 So.2d 125 (1960); *Davy v. Merchants Mut. Cas. Co.*, 97 N.H. 236, 238-239, 85 A.2d 388 (1952); *Venters v. Selected Risks Ins. Co.*, 120 N.J.Super. 549, 552, 295 A.2d 373 (1972); *Ruggiero v. Globe Indem. Co.*, 66 Misc.2d 948, 951, 323 N.Y.S.2d 292 (Civ.Ct.N.Y.1971); *International Serv. Ins. Co. v, Walther*, 463 S.W.2d 774, 776 (Tex.Civ.App.1971); *Quesenberry v. Nichols*, 208 Va. 667, 669, 672-674, 159 S.E.2d 636 (1968);*Westhaver v. Hawaiian Ins. & Guar. Co.*, 15 Wash.App. 406, 407-409, 549 P.2d 507 (1976). Compare and contrast *Pacific Auto Ins. Co. v. Lewis*, 56 Cal.App.2d 597, 600-601, 132 P.2d 846 (1943); *Cotton States Mut. Ins. Co. v. Falls*, 114 Ga.App.812, 814, and see 815-817, 152 S.E.2d 811 (1966); *Miller v. Farmers Mut. Auto. Ins. Co.*, 179 Kan. 50, 53, 54, 292 P.2d 711 (1956); *Glisson v. State Farm Mut. Auto. Ins. Co.*, 246 S.C. 76, 81, 85, 142 S.E.2d 447 (1965).

*Galvin v. Amica Mut. Ins. Co.*, 417 N.E.2d 34, 35-37 (Mass.App.1981). (footnotes omitted.)

In *St. Pierre v. Permanent General Assurance*, 829 So.2d 1185 (La.App.2002), Plaintiff was a deputy sheriff of St. Martin parish who owned a private vehicle insured by Farm Bureau Casualty Insurance. While on duty, he was driving his regularly assigned sheriff's vehicle when he was rear ended by a Ford Explorer driven by one Beau Branch. He was injured in the crash and brought suit against Branch and his insurer, Permanent General Assurance, along with the Louisiana Sheriff's Association. He joined as a defendant, Farm Bureau, seeking recovery of the uninsured motorist coverage under his private insurance policy. The Farm Bureau "regular use" exclusion provided:

*This insuring agreement does not apply:*

*(1) to any automobile owned by or furnished for regular use to either the named insured* or a member of the same household.

*St. Pierre v. Permanent General Assurance*, 829 So.2d at 1187.

The specific uninsured motorist exclusionary clause provided:

**Exclusions.** *This policy does not apply under coverage U:*

. . .

*(b) to any automobile or trailer owned by or furnished for the regular use of the named insured* or a resident of the household not described on the declarations.

*St. Pierre v. Permanent General Assurance*, 829 So.2d at 1187.

Farm Bureau filed a motion for summary judgment, relying on the "regular use" exclusion in the policy, which motion was granted, and Plaintiff appealed.

On appeal, the Court held:

The plaintiff asserts that the regular use exclusion is in conflict with *Howell v. Balboa Insurance Co.*, 564 So.2d 298 (La.1990); and in turn, the plaintiff contends that summary judgment was inappropriate. In *Howell*, the Louisiana Supreme Court held:

UM coverage attaches to the person of the insured, not the vehicle, and that any provision of UM coverage purporting to limit insured status to instances involving a relationship to an insured vehicle contravenes LSA–R.S. 22:1406(D). In other words, any person who enjoys the status of insured under a Louisiana motor vehicle policy which includes [UM] coverage enjoys coverage protection simply by reason of having sustained injury by an inunsured/underinsured motorist vehicle.

*Id*. at 301-302. The plaintiff argues that the above statement renders enforcement of the regular use exclusion of the UM provision against public policy.

On the other hand, Farm Bureau argues in its brief that this court should follow the first circuit's reasoning illustrated in *Dardar v. Prudential Property & Casualty Insurance Co.*, 98-1363 (La.App. 1 Cir. 6/25/99); 739 So.2d 330, *writ denied*, 99-2196 (La. 11/12/99); 750 So.2d 195. In *Dardar*, the first circuit held that an employer's pick-up truck, available for the employee's regular use, was not covered by the employee's personal automobile insurance policy. *Dardar*, 98-1363;

-10-

739 So.2d 330. After being struck by another automobile while driving a pick-up owned by his employer, an employee attempted to recover under an insurance policy on his personal automobile providing UM coverage. *Id*. However, the court found that the employer had furnished the pick-up truck for the employee's regular use. *Id*. The court also found that the employee's policy contained a clause that excluded coverage for any non-owned automobile available for the regular and frequent use of the insured. *Id*. Although the employee argued that such an exclusion was in conflict with the holding of *Howell*, the court found that *Howell* would only apply when a person enjoys the status of an insured. Since the regular use of a non-owned vehicle was expressly excluded from coverage, the court found that the employee's insured status was never implicated. *Id*. Thus, the first circuit ruled that *Howell* was inapplicable and denied the employee's claim. *Id*.

Similarly, the plaintiff in this case is seeking to recover UM coverage on an insurance policy held on his personal automobile. Yet, the Farm Bureau policy liability and UM provisions both provide that the policy does not extend coverage to the insured's regular use of a non-owned vehicle. Like the first circuit in *Dardar*, we conclude that *Howell* is inapplicable to the case before us because the plaintiff never enjoyed the status of an insured under the Farm Bureau policy for the regular use of a non-owned automobile.

Further, this court has examined and ruled that regular use exclusions, such as provided in the policy at issue, do not violate public policy. *See Sandoz v. State Farm Mut. Auto. Ins. Co.*, 620 So.2d 441 (La.App. 3 Cir.1993).[3]

[3]We are mindful that La.R.S. 22:1406(D) has been amended to, at least in some circumstances, legislatively overrule *Howell*. *See Sandoz v. State Farm Mut. Auto. Ins. Co.*, 620 So.2d 441 (La.App. 3 Cir.1993).

*St. Pierre v. Permanent General Assur.*, 829 So.2d 1185, 1188-89 (La.App.3 Cir. 2002).

Cases from other jurisdictions appear to divide on the construction and application of various uninsured motorist statutes. Generally, in those states where uninsured motorist statutes provide that such coverage is mandatory and the named insured has no option to reject uninsured motorist coverage, public policy mandates that the "regular use" exclusion is ineffective to deny coverage. *Roby v. Illinois Founders' Ins. Co.*, 372 N.E.2d 1097 (Ill.App.1978); *State Farm Mut. Auto. Ins. Co. v. Duran*, 785 P.2d 570 (Ariz.1989).

The *Duran* case presents an excellent discussion of the public policy considerations involved when the uninsured motorist statute mandates coverage and allows the named insured no option to reject the coverage. Following very serious injuries in an automobile wreck, claim was made against several parties, including State Farm under its "use of other cars" uninsured motorist coverage. State Farm defended based on the "regular use" exclusion in its policy. Both the trial court and the court

of appeals held that State Farm had no coverage because of the "regular use" exclusion. In reversing on public policy grounds, the Supreme Court of Arizona held:

> At the time of the accident, underinsured [UIM] coverage was mandatory. Legislation during 1981-1982 required insurers to provide:
>
> > [C]overage for a person if the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of the accident is less than the total damages for bodily injury or death resulting from the accident. To the extent that the total damages exceed the total applicable liability limits, underinsurance motorist coverage provided in . . . this section is applicable to the difference.
>
> Laws 1981, ch. 224, § 1; *see also State Farm v. Wilson*, 162 Ariz. 251, 782 P.2d 727 (Ariz.1989) (discussing the legislative development of UIM). Under present laws, insurers must make a mandatory offer of UIM, rather than provide mandatory coverage. *See generally* A.R.S. § 20-259.01.

*State Farm Mut. Auto Ins. Co. v. Duran*, 785 P.2d 570, 572 (Ariz.1989).

After reasserting previous holdings indicative of Arizona's status as a "broad coverage" jurisdiction,[1] the court held:

> At the time of the accident in question, UIM coverage was mandatory. Public policy then and now precludes an insurer from voiding coverage by an exclusion not permitted by the statute. *See Higgins*, 160 Ariz. at 21-22, 770 P.2d at 325-26 ("other vehicle" exclusion void as to UIM); *McKeon*, 159 Ariz. at 112-13, 765 P.2d at 515-16 ("named driver" exclusion void as to UM); *Calvert*, 144 Ariz. at 297, 697 P.2d at 690 ("other vehicle" exclusion void as to UM); *see also Bartning v. State Farm Fire and Casualty Co.*, 162 Ariz. 344, 346, 783 P.2d 790, 792 (Ariz.1989) (public policy mandates that UM coverage be territorially coextensive with liability coverage); *Spain v. Valley Forge Ins. Co.*, 152 Ariz. 189, 194, 731 P.2d 84, 88 (1986) (invalidating an offset provision reducing amount payable under UM coverage by amounts paid under liability coverage).
>
> There is no statute which permits the exclusion of underinsured coverage for vehicles furnished for an insured's regular use. Accordingly, we hold that the

---

[1] The insured and family members insured are covered not only when occupying an insured vehicle, but also when in another automobile, when on foot, when on a bicycle or when sitting on a porch.' 144 Ariz. at 296, 697 P.2d at 689." 785 P.2d at 572.

"furnished for regular use" exclusion in the UIM coverage is void as against public policy.

*State Farm Mut. Auto. Ins. Co. v. Duran*, 785 P.2d 570, 572-73 (Ariz.1989).

In *Roby v. Illinois Founders Ins. Co.*, 372 N.E.2d 1097 (Ill.App.Ct.1978), the defendant maintained that since the uninsured motorist provision of the Illinois statute did not specify that parties could not limit coverage by agreement, that such limitations as contained in the "regular use" exclusion should be upheld. In rejecting this contention, the court said:

> Specifically, section 143a(1) of the Illinois Insurance Code (Ill.Rev.Stat.1971, ch. 73, par. 755a(1)) provides that no automobile liability insurance policy shall be issued in this State unless coverage is provided therein in limits set forth in section 7-203 of the Illinois Vehicle Code (Ill.Rev.Stat.1971, ch. 95½, par. 7-203) ($10,000 per person, $20,000 per accident) against damages caused by uninsured motorists. Public policy expressed by this statute is that the insured be provided coverage which would compensate him in the event of injury by an uninsured motorist, to at least the same extent as had he been injured by a motorist who was insured, in compliance with the Illinois Safety Responsibility Law (Ill.Rev.Stat.1971, ch. 95½, par. 7-100 *et seq.*), *formerly* Financial Responsibility Law (Ill.Rev.Stat.1969, ch. 95½, par. 7A-101 *et seq.*). *Barnes v. Powell* (1971), 49 Ill.2d 449, 452-53, 275 N.E.2d 377, 379; *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill.2d 1, 4, 269 N.E.2d 295, 297.

> The recent case of *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill.2d 167, 13 Ill.Dec.17, 370 N.E.2d 1044 again adopted an expansive interpretation of section 143a and is controlling herein.

> . . .

> The court, in *Squire*, discussed *Doxtater v. State Farm Mutual Automobile Insurance Co.* (1972), 8 Ill.App.3d 547, 290 N.E.2d 284, in which the insured was struck by an uninsured motorist while riding his motorcycle which was not listed in his policy of insurance. His policy provided an exclusion, similar to the one in *Squire* and the case at bar, which would have barred recovery. The *Doxtater* court held that the exclusion conflicted with the underlying purpose of section 143a and was rendered unenforceable by the provisions of section 442. The *Squire* court, citing *Doxtater*, stated:

>> The expansive interpretation applied by a majority of * * * (the supreme court in *Barnes v. Powell* (1971), 49 Ill.2d 449, 275 N.E.2d 377), leads us to conclude that, presented with the issue at bar, our Supreme Court would interpret Section 143a of the Insurance Code as a direction to insurance companies to provide uninsured motor vehicle coverage for "insureds," regardless of whether, at the time of

injury, the insureds occupied or operated vehicles declared in the subject policy. (*Squire v. Economy Fire & Casualty Co.*)

. . .

Since the exclusionary clause in the instant case is virtually identical to the clause in *Squire*, and since it makes coverage dependent upon the insured being in a vehicle listed in the policy, it violates section 143a and is rendered unenforceable by section 442.

*Roby v. Illinois Founders Ins. Co.*, 372 N.E.2d 1097, 1100-01 (Ill.App.Ct.1978).[2]

In *Briones v. State Farm Mut. Auto. Ins. Co.*, 790 S.W.2d 70 (Tex. App.1990), the Texas Court of Appeals, abandoning prior holdings to the contrary, followed the Texas Supreme Court's holding in *Stracener v. United Svc. Auto. Ass'n.*, 777 S.W.2d 378 (Tex. 1989) in holding that article 5.06-1 of the Texas Insurance Code mandated that uninsured motorist policies provide coverage. Said the Court:

Having taken this position, we conclude that under the facts of this case and the uncontroverted evidence, that to deny Briones recovery under the uninsured motorist clause of his family policy would be to frustrate the intent of the legislature to provide protection for conscientious motorists from "financial loss caused by negligent financially irresponsible motorists" as is mandated by the inclusion of uninsured and underinsured motorist coverage in the Texas Insurance Code.

*Briones v. State Farm Mut. Auto. Ins. Co.*, 790 So.2d 70, 74 (Tex.App.1990).

In construing the "regular use" exception as to uninsured motorist coverage in a case where a deputy sheriff was driving his patrol car when injured by an uninsured motorist, the Court of Appeals of Washington upheld the exclusion, pointing out that the named insured had the option to reject uninsured motorist coverage in its entirety. Under Washington's less-than-broad coverage uninsured motorist statute, the Court held:

---

[2] It bears noting that in 1995, the Illinois state legislature amended section 143a to include the following language: "Uninsured motor vehicle coverage does not apply to bodily injury, sickness, disease, or death resulting therefrom, of an insured while occupying a motor vehicle owned by, or furnished or available for the regular use of the insured, a resident spouse or resident relative, if that motor vehicle is not described in the policy under which a claim is made. . . .

1995 Ill Legis Serv. 206 (West); *see also* 215 Ill. Comp. Stat. 5/143a (2004).

Moreover, to interpret regular use to exclude the patrol car violates the purpose of the exclusion by significantly increasing the risk to Safeco without any corresponding increase in premiums. *Grange Ins. Ass'n*, 103 Wash.2d at 712-13, 694 P.2d 1087. The daily use of a patrol vehicle, often in risky driving situations, substantially increases the risks of accidents. Consequently, we find the purpose behind the statutory exclusion is met and the court did not err in finding the policy excluded coverage.

*Drollinger v. Safeco Ins. Co. of America*, 797 P.2d 540, 543 (Wash.App. 1990).

Colorado is a no-fault jurisdiction that has gone through a decades-long struggle with uninsured motorist coverage and public policy. The controlling statute in Colorado, like that in Tennessee, provides that the named insured may reject uninsured motorist coverage in writing. In construing an "owned-but-uninsured" exclusionary clause relative to Colorado's uninsured motorist statute and its no-fault insurance law, the Colorado Court of Appeals acknowledged the general split of authority among sister jurisdictions.

A split of authority exists among the many jurisdictions that have addressed the effectiveness of the exclusion. 12A G. Couch, *Cyclopedia of Insurance Law*, § 45:636 (M. Rhodes rev. 2d ed. (1981); 2 N.P. Terry, *No-Fault & Uninsured Motorist Automobile Insurance* § 24.10[5] (1984).

A number of decisions have held the "owned-but-uninsured" exclusionary clause unenforceable. *See Bradley v. Mid-Century Insurance Co.*, 409 Mich. 1, 294 N.W.2d 141 (1980); *Harvey v. Travelers Indemnity Co.*, 188 Conn. 245, 449 A.2d 157 (1982); *Kau v. State Farm Mutual Automobile Insurance Co.*, 58 Haw. 49, 564 P.2d 443 (1977); *Kaufmann v. Economy Fire & Casualty Insurance Co.*, 52 Ill.App.3d 940, 10 Ill.Dec.776, 368 N.E.2d 371 (1977), *aff'd*, 76 Ill.2d 11, 27 Ill.Dec.742, 389 N.E.2d 1150 (1979); *Lindahl v. Howe*, 345 N.W.2d 548 (Iowa 1984); *State Farm Mutual Automobile Insurance Co. v. Hinkel*, 87 Nev. 478, 488 P.2d 1151 (1971).

Other jurisdictions have upheld the exclusion. *See Holcomb v. Farmers Insurance Exchange*, 254 Ark. 514, 495 S.W.2d 155 (1973); *Shipley v. American Standard Insurance Co.*, 183 Neb. 109, 158 N.W.2d 238 (1968); *Beaupre v. Standard Fire Insurance Co.*, 736 S.W.2d 237 (Tex.App. 1987); *Anderson v. State Farm Mutual Automobile Insurance Co.*, 471 N.E.2d 1170 (Ind.App.1984); *Simmons v. Nationwide Mutual Insurance Co.*, 65 Ohio App.2d 28, 414 N.E.2d 440 (1979).

In those jurisdictions invalidating the exclusion, a primary concern is that it conflicts with the purpose for uninsured motorist insurance, which is to provide the same degree of protection to an insured as he would have received from a financially responsible tortfeasor. *See, e.g., Jacobson v. Implement Dealers Mutual Insurance*

-15-

*Co.*, 196 Mont. 542, 640 P.2d 908 (1982). The exclusion is therefore viewed as a restriction on the intended scope of uninsured motorist coverage which ordinarily applies regardless of whether the insured is injured in an insured vehicle, an unowned vehicle, or on foot. *See, e.g., Calvert v. Farmers Insurance Co.*, 144 Ariz. 291, 697 P.2d 684 (1985).

On the other hand, courts upholding the exclusion argue that the insured and his insurer freely entered into a contract to exclude recovery in the owned-but-uninsured vehicle situation. *See Clark v. State Farm Mutual Automobile Insurance Co.*, 743 P.2d 1227 (Utah 1987). To permit recovery otherwise, would result in a "free-ride" for some multiple-vehicle owners and would force insurers to provide gratuitous coverage while incurring additional risk. *See Anderson v. American Economy Insurance Co.*, 43 Wash.App. 852, 719 P.2d 1345 (1986). Moreover, rewarding a plaintiff who himself is operating an owned but uninsured vehicle is unfair and repugnant to the legislative policy behind uninsured motorist statutes. *See Dullenty v. Rocky Mountain Fire & Casualty Co.*, 111 Idaho 98, 721 P.2d 198 (1986).

*Williams-Diehl v. State Farm*, 793 P.2d 587, 589-90 (Colo.App.1989).

In 1995, the Supreme Court of Colorado reiterated its view that the Colorado uninsured motorist statutes provided for broad coverage ". . . to assure the wide-spread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists." *Aetna Casualty & Surety Co. v. McMichael*, 906 P.2d 92, 98 (Colo.1995).

In April of 2001, the Supreme Court of Colorado, in the context of construing the Colorado uninsured motorist statutes as related to the son of the named insured injured while riding a motorcycle, applied the broadest possible uninsured motorist coverage, relegating the significance of the named insured's right to waive the coverage to cases wherein the waiver was actually accomplished. Said the Court:

We now address whether DeHerrera is eligible for UM/UIM coverage. As with PIP coverage, Sentry argues that the policy unambiguously fails to provide UM/UIM coverage to a person occupying a vehicle that is not a car at the time of injury and thus excludes the motorcyclist from coverage in this case.

The UM/UIM statute contains no provisions excluding protection for an insured based on the kind of vehicle an insured occupies at the time of injury. Rather, it simply states that UM/UIM coverage, if not waived by the named insured, must protect "persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." § 10-4-609(1). This phrase, " 'persons insured thereunder' means that insurers must provide UM/UIM coverage for the protection of *persons* insured under the liability policy that the insurer is

issuing. *Aetna Cas. & Sur. Co.*, 906 P.2d at 97 (emphasis added). Thus, the statute provides coverage for *persons*; it does not place geographical limits on coverage and does not purport to tie protection against uninsured motorists to occupancy in any kind of *vehicle*.

This construction of the UM/UIM statute is consistent with the effect of UM/UIM coverage limits to act as a replacement for the liability policy limits of an uninsured or underinsured motorist who is at fault in a motor vehicle accident. If a motorist insures a vehicle for liability coverage, his policy affords protection to all members of the public injured by negligent conduct "arising out of the use of the motor vehicle," irrespective of whether the injured person was a pedestrian, a bicyclist, a motorcyclist, or an occupant of a car. § 10-4-706(1)(a); *see also* § 42-7-413(1)(c); *Kohl v. Union Ins. Co.*, 731 P.2d 134, 135 (Colo.1986) (liability coverage applies whenever the injury is causally related to a conceivable use of the insured vehicle); *Mullis v. State Farm Mut. Auto. Ins. Co.*, 252 So.2d 229, 236 (Fla.1971) ("If an auto liability policy insured negligently hits another with his insured automobile, it is immaterial whether such other is a pedestrian or occupies any particular vehicle; the insured's carrier is liable.")

*DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167, 174-75 (Colo.2001).

While *DeHerrera v. Sentry Ins. Co.* by *dicta* specifically disapproves *Williams-Diehl v. State Farm Fire & Casualty Co.*, it does not mention *Cruz v. Farmers Ins. Exchange*, 12 P.3d 307 (Colo.App.2000). *Cruz* was decided by the Colorado Court of Appeals on March 16, 2000, with rehearing denied on June 1, 2000, and certiorari denied by the Supreme Court of Colorado on November 14, 2000.

*Cruz v. Farmers Ins. Exchange*, 12 P.3d 307 (Colo.App. 2000) involved an on-duty policeman who sustained injuries in an accident while driving his regularly assigned police vehicle. He filed a claim under the uninsured motorist provisions of his wife's policy of insurance with Farmers Exchange. The trial court granted summary judgment to the insurer based on the "regular use" exclusion. The Colorado Court of Appeals affirmed noting that under the Colorado statute, uninsured motorist coverage was not mandatory. Said the Court:

Plaintiff next contends that, assuming the "regular use" exclusion applies to him, it nevertheless violates the public policy behind Colorado's uninsured motorist statute, § 10-4-609, C.R.S.1999.

An insurance policy may be void as against public policy if it dilutes, conditions, or limits statutorily mandated coverage. *Terranova v. State Farm Mutual Automobile Insurance Co.*, 800 P.2d 58 (Colo.1990). However, a policy exclusion is not void simply because it narrows the circumstances under which coverage applies. *Farmers Insurance Exchange v. Chacon*, 939 P.2d 517 (Colo.App.1997).

-17-

The question is whether the policy language which limits underinsured motorist coverage to vehicles covered under the policy and other vhicles used occasionally is consistent with the language, intent, and public policy considerations of § 10-4-609, C.R.S. 1999. We conclude that it is.

Section 10-4-609 states, in pertinent part:

No automobile liability or motor vehicle liability policy . . . shall be delivered or issued . . . unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in, section 42-7-103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.

The intent of the statute is to compensate innocent insureds for losses caused by financially irresponsible drivers. However, underinsured motorist coverage is not mandatory, and individual insureds are free to decline such coverage. *See State Farm Mutual Automobile Ins. Co. v. Nissen*, supra. Further, the statute does not require full indemnification of losses suffered at the hands of underinsured motorists under all circumstances. Rather, it intends to put a person injured by an underinsured motorist in the same position as one injured by a tortfeasor insured in compliance with the law. *See Terranova v. State Farm Mutual Insurance Co.*, supra.

Thus, under § 10-4-609(1), insurers are required to offer uninsured/underinsured motorist coverage to a class of individuals coextensive with the class covered by the liability provision of the respective policy. See *Aetna Casualty & Surety Co. v. McMichael*, 906 P.2d 92 (Colo.1995).

Here, plaintiff's policy contains the same "regular use" exclusion in both the liability and uninsured/underinsured sections of the policy. Thus, the same classes of people are provided coverage under both provisions to the same extent.

Plaintiff relies upon cases from other jurisdictions holding that similar exclusions violate public policy. *See, e.g., State Farm Mutual Automobile Insurance Co. v. Duran*, 163 Ariz. 1, 785 P.2d 570 (1989). However, those cases are inapposite. They deal with statutes and public policies that differ from those in Colorado.

We therefore conclude that the "regular use" exclusion in the uninsured motorist coverage of plaintiff's policy does not offend public policy. See *Williams-*

*Diehl v. State Farm Fire & Casualty Co.*, 793 P.2d 587 (Colo.App.1989); *see also Urtado v. Shupe*, supra ("drive other car" exclusions in the liability coverage portion of insurance policies do not violate public policy).

*Cruz v. Farmers Ins. Exchange*, 12 P.3d 307, 312 (Colo.App.2000).

In *Jaimes v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 743 (Colo.App.2002), the Colorado Court of Appeals faced an exclusion providing:

THERE IS NO COVERAGE

. . . .

2. FOR *BODILY INJURY* TO AN *INSURED*:
a. WHILE *OCCUPYING*, OR
b. THROUGH BEING STRUCK BY A MOTOR VEHICLE OWNED BY *YOU*, *YOUR SPOUSE* OR *ANY RELATIVE* IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY.

The Court first determined that the exclusion was valid, but on grant of certiorari by the supreme court, the case was remanded for reconsideration in the light of *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167 (Colo.2001).

The Court of Appeals then concluded that the exclusion was void as against public policy:

We first address the "owned but not insured under this policy" exclusion as applied to UM/UIM coverage and conclude that the exclusion is contrary to the public policy of Colorado and thus void.

The ability of an insurer to exclude UM/UIM benefits under certain circumstances historically has been recognized as valid and enforceable in Colorado and not repugnant to public policy. *See* § 10-4-609; *Terranova v. State Farm Mutual Automobile Insurance Co.*, 800 P.2d 58 (Colo.1990)(exclusion of UM/UIM coverage for the owner-occupant injured in a one-vehicle accident is enforceable); *Cruz v. Farmers Insurance Exchange*, 12 P.3d 307 (Colo.App.2000)("regular use" exclusion applicable to UM/UIM coverage is not contrary to public policy); *Williams-Diehl v. State Farm Fire & Casualty Co., supra* ("owned but not insured" exclusion is not contrary to public policy); *Arguello v. State Farm Mutual Automobile Insurance Co., supra* (same).

However, in *DeHerrera*, the supreme court indicated its disapproval of *Williams-Diehl* and implicitly disapproved of *Arguella*, to the extent they conflicted with *DeHerrera*. *DeHerrera v. Sentry Insurance Co., supra*, 30 P.3d at 176 n. 8.

-19-

Thus, the supreme court, in obiter dictum, has announced its limited disapproval of the exclusion in the UM/UIM context.

In *DeHerrera*, the insured's child was injured while riding an unlicensed, off-the-road motor bike owned by the child, upon being struck by an uninsured or underinsured motor vehicle. The insured then sought Personal Injury Protection and UM/UIM benefits provided by a policy insuring her automobile. The applicable policy provided UM/UIM coverage only if an insured person was occupying a car or was a pedestrian, and coverage was denied on the basis that the child was not occupying a car and was not a pedestrian.

As pertinent here, in *DeHerrera*, the supreme court held that UM/UIM coverage extended to the child, an insured party, even when operating the motor bike, because UM/UIM coverage is personal, rather than vehicle specific, under § 10-4-609. The coverage thus travels with the insured, there a resident family member driving an uninsured vehicle. The court, therefore, voided the limitation on the UM/UIM coverage to insureds who are in a car or are pedestrians as being contrary to § 10-4-609 and the public policy of Colorado.

*Jaimes v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 743, 745-46 (Colo.App.2002).

We will leave the present authoritative or unauthoritative status of *Cruz v. Farmers Ins. Exchange*, 12 P.3d 307 (Colo.App.2000) to the courts of Colorado.

While the appellate courts of Tennessee have not addressed the "regular use" exclusion in a context similar to the case at bar, two very relevant considerations must guide our actions.

1. As late as November 2002, the Supreme Court of Tennessee has reiterated the long-standing rule in *Terry v. Aetna Casualty & Surety Co.*, 510 S.W.2d 509 (Tenn.1974) that Tennessee's uninsured motorist statutes do not provide for broad coverage but effectuate a limited and narrow purpose. *Poper ex rel. Poper v. Rollins*, 90 S.W.3d 682, 687 (Tenn.2002).

2. Tennessee Code Annotated section 56-7-1201(a)(2) providing that any named insured may reject uninsured motorist coverage in its entirety is a valid and enforceable statute. *Weiss v. State Farm Fire & Casualty Co.*, 107 S.W.3d 503, 505 (Tenn.Ct.App.2001).

Recognizing that Tennessee is not a "broad coverage" state and that Tennessee Code Annotated section 56-7-1201 allows the named insured the unconditional option to reject uninsured and underinsured motorist coverage altogether, it would appear that the public policy considerations sustaining the Illinois, Arizona and Texas holdings are inapplicable to Tennessee.

*Jackson v. Jones*, 804 N.E.2d 155 (Ind.App.2004) involved an on-duty Indianapolis police officer in a fact situation that very closely parallels the case at bar. The Indianapolis Police

Department provided a motorcycle for Jackson's regular use. The City of Indianapolis is self-insured and is not required to carry uninsured and underinsured motorist coverage. Jones collided with Jackson causing personal injury to Jackson. After determining that Jones was uninsured, Jackson filed a claim against Illinois Farmers Insurance Company under his personal automobile policy. The trial court granted summary judgment to the insurer under the "regular use" exclusion in its policy. It is well to note the striking similarity of the dilemma faced by Jackson to that faced by Shepherd. Metropolitan Government of Nashville is self-insured and is not required to carry uninsured-underinsured motorist coverage. The proof shows that Shepherd cannot prevail upon his own private insurance carrier to provide uninsured motorist coverage for him in the use of police vehicles. The court in *Jackson* acknowledged the patrolman's dilemma but determined that the solution is legislative, not judicial:

> Jackson does not contend that his Farmers' policy is ambiguous or that it does not explicitly exclude uninsured or underinsured coverage under the facts here. Rather he contends that the exclusion in the uninsured and underinsured section, even though it is comparable to that found in the liability section, is void because it is against public policy to exclude public safety officers from coverage under their personal insurance policies, even while on duty, because the government entity who owns and thus insures the vehicle is not required to provide uninsured or underinsured motorist coverage. Jackson contends that because the statute, IC 27-7-5-2, does not provide for exceptions, government vehicles cannot be excluded from coverage by personal insurance policies. Because government entities are self-insured and therefore exempted by the Tort Claims Act from being required to carry uninsured motorist coverage, such exclusion would leave him and other government employees without the uninsured motorist coverage provided for by law. He argues that because the legislature did not specifically provide for the exception, such exception should not be allowed.

> Jackson notes that the purpose of uninsured motorist coverage is to place the insured in substantially the same position as if the other party had complied with the minimum financial responsibility requirements of the insurance statutes. *See Am. States Ins. Co. v. Braden*, 625 N.E.2d 1252, 1257 (Ind.Ct.App.1993). Jackson concedes that his "policy specifically limits uninsured motorist coverage as to persons who would otherwise qualify as insured for liability purposes." *See Whitledge*, 586 N.E.2d at 887.

> Jackson argues that *Smith v. Allstate Ins. Co.* does not control because the vehicle there was owned by a private business which could purchase uninsured and underinsured motorist coverage. However, language in an insurance policy which limits or diminishes the protection required by the uninsured motorist statute is contrary to public policy only if it specifically limits uninsured motorist protection as to person[s] who would otherwise qualify as insured for liability purposes.

-21-

*Harden v. Monroe Guar. Inc. Co.*, 626 N.E.2d 814, 819 (Ind.Ct.App.1993), *trans. denied*.

Our supreme court has stated that "we may even agree that public policy favors a requirement that self-insurers under the financial responsibility law should be required to provide some sort of uninsured motorist protection for those who drive their [vehicles], it is not our role to sit as a judicial legislator and write such a requirement into the act." *City of Gary*, 612 N.E.2d at 119. Since no legislative action has been taken on this issue, it is clearly the intent of the legislature to allow government entities to be self-insured for liability and not insured for uninsured or underinsured claims. More recently, our supreme court wrote that "public policy is a matter for the General Assembly subject only to constitutional limitations on legislative authority." *Murray v. Conseco, Inc.*, 795 N.E.2d 454, 457 (Ind.2003). Jackson's Farmers' policy is neither ambiguous nor contrary to statute. Our legislature has not revised either statute to make the exceptions in either the governmental entity's lack of uninsured or underinsured protection or the exceptions in Jackson's Farmers' policy against public policy.

*Jackson v. Jones*, 804 N.E.2d 155, 160-61 (Ind.App.2004).

As noted earlier, Shepherd asserts the same dilemma as the patrolman did in *Jackson*. Metropolitan Nashville does not provide uninsured or underinsured motorist coverage for patrolmen operating its fleet of patrol vehicles. Shepherd cannot prevail upon his personal vehicle insurer to extend to him uninsured motorist protection while he is driving an assigned patrol vehicle. He is, thus, trapped in what he correctly refers to as a "black hole." Like Jackson, however, his dilemma is legislative, not judicial. Since Tennessee is a less-than-broad coverage uninsured motorist state and the named insured has the unconditional statutory option to reject such coverage altogether, the "regular use" exclusion does not contravene public policy.

The judgment of the trial court is in all respects affirmed with costs of appeal assessed against the appellant, Dennis R. Shepherd, for which execution may issue. The case is remanded to the trial court for such other proceedings as may be necessary.

_____
WILLIAM B. CAIN, JUDGE