385 So.2d 352 (1980)
Alfred S. ROMANO
v.
Rodney A. GIRLINGHOUSE.
No. 13198.
Court of Appeal of Louisiana, First Circuit.
March 31, 1980.
*353 Joseph L. Waitz, Houma, for plaintiff and appellee.
W. Richard House, Jr., New Orleans, for appellant and defendant Kansas City Southern Railway Co. & L. D. Durrett.
Kerry P. Camarata, Metairie, for defendant Rodney A. Girlinghouse.
Charles Hanemann, Jr., Houma, for defendant-third party Chromalloy American Corp.
Frank H. Walk, Jr., New Orleans, for defendant-third party Government Employees Insurance Co.
John L. Lanier, Thibodaux, for defendant-third party Aetna Casualty & Surety Co.
Before COVINGTON, LOTTINGER and COLE, JJ.
LOTTINGER, Judge.
This is an action ex delicto filed by Alfred S. Romano against Rodney A. Girlinghouse, Kansas City Southern Railway Company (KCS) and L. D. Durrett for injuries received when plaintiff was a guest passenger in an automobile operated by Girlinghouse which collided with a train owned by KCS and engineered by Durrett. KCS and Durrett impleaded, among others, Aetna Fire and Casualty Company (Aetna), Girlinghouse's personal family automobile insurer. From a summary judgment in favor of Aetna, KCS and Durrett have appealed.
At issue is the proper interpretation of the "regular use" exclusion in the family automobile policy.
Plaintiff Alfred Romano accompanied defendant Rodney Girlinghouse on a business trip to Minden, Louisiana, on February 8, 1977. Girlinghouse was an employee of Delta Iron Works, while Romano was an employee of Petroleum Treaters, both subsidiaries of American Chromalloy Corporation. The two men drove to Minden in Girlinghouse's company car.
In the early evening of the next day, Girlinghouse and Romano were traveling to the home of Bill Roberts, another Delta employee, when the company car in which they were riding collided with the train. Romano alleges Girlinghouse was driving the car although there is still some dispute as to this fact. For the purposes of the appeal, we will assume Girlinghouse was driving. In deposition, Girlinghouse claims he and Romano were going to Roberts' house to eat dinner and to discuss an upcoming oil show in Houston. Whether the trip to Roberts' house was for business or social purposes is also in dispute. The accident resulted in serious injuries to Romano, who subsequently brought this suit against Girlinghouse, as the alleged driver of the company car; the Kansas City Southern Railway Company; and Durrett, the operator of the locomotive involved in the accident. The KCS and Durrett impleaded Aetna Fire and Casualty Company, seeking indemnity or contribution for any damages they might be required to pay. Aetna, in a motion for summary judgment, contended that the company vehicle Girlinghouse was allegedly driving was a vehicle furnished for his regular use and was therefore excluded *354 from coverage under the family automobile policy issued by Aetna.
The Aetna policy covers certain listed owned automobiles and some unlisted non-owned cars. Covered under the non-owned provisions are automobiles and trailers "not owned by or furnished for the regular use of either the named insured or any relative..."
KCS and Durrett concede that Girlinghouse's employer "placed no restriction upon Girlinghouse's use of his company car, and Girlinghouse was free to use it for social as well as business purposes." But they question whether summary judgment was the proper device to remove Aetna from the suit. KCS and Durrett contend there are some disputed issues of fact which if resolved in their favor, could result in coverage under the Aetna policy. The only disputed factual issue raised in brief is whether Girlinghouse was engaged in the course and scope of his employment at the time of the accident or whether he was on a social visit at that time. In their memorandum in opposition to the motion for summary judgment, Durrett and KCS also seemed to question whether Girlinghouse's use of the company car on an extended business trip was a "regular use" of the vehicle in Girlinghouse's employment and whether such use was intended to be excluded under the Aetna policy provisions.
Whether a certain vehicle has been furnished for the regular use of a person is a question which can be answered only after considering the facts and circumstances of each case. In Blanchard v. Hanover Insurance Company, 250 So.2d 484 (La.App. 1st Cir. 1971), the court held that an employer's pickup truck which was used by the plaintiff to deliver the employer's products was furnished for the regular use of the plaintiff. The court noted that the employer continuously furnished certain vehicles for the plaintiff's use at regular and predictable certain intervals. The accident occurred while the plaintiff was in the course and scope of his employment and while he was using one of the vehicles regularly furnished to him by the employer. The use "constantly recurred at fixed intervals" so that plaintiff was precluded from coverage under the medical provisions of his personal automobile policy.
Likewise, in Brouillette v. Fireman's Fund Insurance Company, 163 So.2d 389 (La.App. 3rd Cir. 1964), writ refused, 246 La. 594, 165 So.2d 485, the court excluded coverage under a personal automobile liability policy when the plaintiff was injured while performing his duties as a city fireman on a city fire truck. The regular use exclusionary clause was held to be unambiguous so that the policy did not have to be interpreted strictly against the insurer. The court also noted that the purpose of the exclusionary clause is to limit coverage to casual or infrequent use or occupancy of automobiles other than the automobile defined in the policy. See also Dickerson v. Millers Mutual Fire Insurance Company of Texas, 139 So.2d 785 (La.App. 2nd Cir. 1962), wherein the court held that a funeral home ambulance was regularly furnished to the funeral home employee because he drove it on sporadic occasions when it was needed to transport patients. The accident in that case occurred while the funeral home employee was on the job.
A case which appears to be close in point to the facts of this case but which, unfortunately, bears little discussion of the regular use clause is Crandall v. Scott, 350 So.2d 922 (La.App. 4th Cir. 1977). In that case, a company vehicle was furnished to the father on an apparently regular basis. The father apparently had total use of the car 24 hours a day. While the father and mother were on a vacation, the father's minor son took the keys of the company car from the kitchen and accidentally wrecked the vehicle. In excluding coverage under the father's personal automobile policy, the court held, without discussion, that the car was furnished for the regular use of the father-employee, and therefore the father's insurer was not liable.
A case in which coverage was allowed was Lincombe v. State Farm Mutual Automobile Insurance Company, 166 So.2d 920 (La.App. 3rd Cir. 1964), writ refused, 246 *355 La. 907, 168 So.2d 820. In that case a woman had purchased a new car but the new car was not in stock. The automobile dealer furnished her another car while the car she ordered was being delivered. She was involved in an accident in the car that had been furnished for her use and a suit was brought against her personal liability insurer. In holding that the personal liability policy applied to the accident, the court noted that the risk to the insurer was not increased by the woman's use of the dealership's car, and consequently, there was no double coverage. The court found that the car had not been furnished for her regular use because there was no commitment by the automobile dealership to provide her with this particular vehicle at all times while the car she ordered was being delivered and that her use of the loaned automobile would be discontinued after her new vehicle arrived.
In the case at bar, Girlinghouse had use of the company vehicle 24 hours a day. He used the car for business and social purposes, and he often took it with him on business trips in other parts of the state and even out of state. The keys to the company car were on a ring with keys to his house and other personal keys.
Even conceding for the purposes of this appeal that Romano and Girlinghouse were on a social instead of a business function at the time the accident occurred, Girlinghouse's personal automobile policy would not provide coverage. This is so because Girlinghouse was free to use his company car in any way that he saw fit, including personal, business and social purposes. Excluding coverage under these circumstances also squares with the intent of the regular use exclusion. The purpose of the regular use exclusion is to protect an insurance company against double coverage when a premium has been paid on only one vehicle. If the insured has access to a second vehicle furnished for his regular use, the insurance company can rightfully require that a premium be paid for the insured's use of the second vehicle. It simply would not be fair to impose liability on Girlinghouse's personal automobile insurer for an accident which occurred when Girlinghouse was driving a company car which had been furnished to him for almost any use he saw fit.
We realize that in reviewing a summary judgment, the benefit of the doubt should in all cases be given to the party opposing the motion for summary judgment. And only if there is no genuine issue as to material fact, and the mover is entitled to a judgment as a matter of law, should a summary judgment be granted. La.C.C.P. art. 966. We do not see how any resolutions of the facts in this case can lead to a holding that coverage is due under Girlinghouse's personal automobile liability policy.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.