897 So.2d 98 (2004)
Michael E. DAVENPORT and Theresa M. Davenport
v.
PRUDENTIAL PROPERTY & CASUALTY INSURANCE CO. and BellSouth Communications Corp.
No. 2003 CA 2593.
Court of Appeal of Louisiana, First Circuit.
October 29, 2004.
*99 Bob H. Hester, Kathryn Flynn Simino, Baton Rouge, Counsel for Plaintiffs/Appellants Michael E. Davenport and Theresa M. Davenport.
Glenn Scott Love, Stephen Dale Cronin, Baton Rouge, Counsel for Defendant/Appellee Prudential Property & Casualty Insurance Company.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
*100 GUIDRY, J.
In this personal injury case, plaintiffs, Michael E. Davenport and Theresa M. Davenport, appeal a judgment denying uninsured/underinsured motorist (UM/UIM) coverage under their personal automobile insurance policy. For the reasons assigned, we affirm.

FACTS AND PROCEDURAL HISTORY
On April 20, 2001, Michael E. Davenport (Davenport) was stopped at a traffic light when a vehicle operated by Cody A. Richard struck the rear of the van Davenport was driving. The accident was due solely to the negligence of Cody Richard. At the time, Davenport was in the course and scope of his employment with BellSouth Telecommunications Corporation (BellSouth), and was driving a company-owned van. Moreover, except for when the van was being serviced or repaired, he used it throughout every workday from 1999 through the date of the accident. As a result of the collision, Davenport sustained bodily injuries that necessitated surgery and was unable to work for some time.
On April 19, 2002, plaintiffs filed suit against Prudential Property and Casualty Insurance Company (Prudential), their personal automobile insurance carrier, and Bellsouth.[1] Prudential filed an answer denying coverage under the policy and asserting all terms, conditions and provisions thereof as an affirmative defense. The parties subsequently filed a joint stipulation of facts, agreeing that the sole issue before the trial court was whether the Prudential policy provided coverage to plaintiffs based on the facts stipulated. They further agreed that, if coverage was found, there should be judgment for plaintiffs for $100,000, plus legal interest and all costs, since Davenport's damages exceeded the combined policy limits of the tortfeasor's liability policy and the Prudential policy (i.e., $100,000 per person). After taking this matter under advisement, the trial court dismissed plaintiffs' claims against Prudential, finding no UM/UIM coverage existed under the Prudential policy.

ASSIGNMENT OF ERROR
Plaintiffs contend the trial court erred in finding no UM/UIM coverage and dismissing their suit based on a "regular use" exclusion in the Prudential policy.

DISCUSSION
In this case, UM/UIM coverage is provided in Part 4 of the Prudential policy, which provides in pertinent part as follows:
WHO IS INSURED (PART 4)
IN A NON-OWNED CAR[2]
You[3] and a resident relative are insured while using a non-owned car. The owner must give permission to use it. It must be used in the way intended by the owner.
LOSSES WE WILL NOT PAY FOR (PART 4)
REGULARLY USED NON-OWNED CARS
We will not pay for bodily injury or property damage for you or a household resident using a non-owned car *101 not insured under this part, regularly used by you or a household resident.
BUSINESS OR JOB
We will not pay for bodily injury or property damage for anyone (other than you or a resident relative) using a non-owned car in any business or job.
An insurance policy is a contract between the parties and should be construed using the general rules of contractual interpretation. If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, and the agreement must be enforced as written. La. C.C. art. 2046; Gray Insurance Company v. Old Tyme Builders, Inc., 03-1136, pp. 3-4 (La.App. 1st Cir.4/2/04), 878 So.2d 603, 605-06, writ denied, 04-1067 (La.6/18/04), 876 So.2d 814. Moreover, since an insurance policy is a contract between the parties, the parties are free to contract regarding the extent of coverage contained therein, subject to the limits imposed by law. See Ferrell v. Fireman's Fund Insurance Co., 96-3028, p. 11 (La.7/1/97), 696 So.2d 569, 576.
Our examination of the applicable provisions reveals the trial court correctly concluded UM/UIM coverage was barred in this case by the "regular use" exclusion.[4] In Peyton v. Bseis, 96-0309 (La.App. 4th Cir.8/21/96), 680 So.2d 81, the Fourth Circuit dealt with a very similar situation involving a "regular use" exclusion with language identical to the exclusion herein. As in this case, the plaintiff sought UM coverage under his own personal automobile policy for injuries he received in a vehicular collision caused by the negligence of a third party. At the time of his injury, Peyton was an on-duty police officer driving one of the "pool" of police cars regularly available for his use. The Fourth Circuit held the policy's "regular use" exclusion barred UM coverage under those circumstances. In reaching that conclusion, the court observed that an employee's family automobile policy was not designed to cover an employer's vehicle regularly used by the employee in employment situations. Peyton, 96-0309 at 5-6, 680 So.2d at 84. See also Dardar v. Prudential Property & Casualty Insurance Co., 98-1363, p. 5 (La.App. 1st Cir.6/25/99), 739 So.2d 330, 334, writ denied, 99-2196 (La.11/12/99), 750 So.2d 195. This Court explained in Romano v. Girlinghouse, 385 So.2d 352, 355 (La.App. 1st Cir.1980), that:
The purpose of the regular use exclusion is to protect an insurance company against double coverage when a premium has been paid on only one vehicle. If the insured has access to a second vehicle furnished for his regular use, the insurance company can rightfully require that a premium be paid for the insured's use of the second vehicle.
See also William Shelby McKenzie & H. Alston Johnson, III, Insurance Law and Practice § 63 at 176, in Louisiana Civil Law Treatise (1996).
In the instant case, plaintiffs do not dispute that Davenport was driving a company van not listed in his policy, nor that he regularly used the van in the performance of his job duties. These facts clearly fall within the intended scope and purpose of the policy's "regular use" exclusion. When the language of an insurance policy is clear, it must be enforced as written. Gray, 03-1136 at 4, 878 So.2d at 606.
Nevertheless, plaintiffs contend UM/UIM coverage existed under the policy's *102 "business or job" exclusion, despite the clear language of the "regular use" exclusion. The "business or job" exclusion precluded coverage for anyone, other than the named insureds or a resident relative, using a non-owned car in any business or job. As noted, Davenport was using a company van in his job at the time of the accident. Plaintiffs seem to argue that the exemption of Davenport (as a named insured) from the application of the "business or job" exclusion meant that coverage was extended to him whenever he was using a non-owned car in his job. Thus, plaintiffs are relying upon a policy exclusion as a basis for coverage.
Plaintiffs' argument lacks merit for two reasons. First, it impermissibly ignores the existence of the "regular use" exclusion. An insurance policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another portion of the policy. See La. C.C. art.2050; Gray, 03-1136 at p. 4, 878 So.2d at 606. We agree with plaintiffs that the "business or job" exclusion did not bar Davenport from UM/UIM coverage by virtue of the fact that he was injured on the job while using a company van. However, it does not follow from that conclusion that he necessarily was entitled to coverage in all instances when he was using the company van on the job. Plaintiffs' argument disregards the possibility that a separate exclusion might bar Davenport from coverage on an entirely different basis, even when he was using the van on the job. See Magnon v. Collins, 98-2822, p. 8 (La.7/7/99), 739 So.2d 191, 197-98. That is exactly what occurred in this case when Prudential denied coverage to plaintiffs on the basis of the "regular use" exclusion, which was clearly applicable under the circumstances present.
Secondly, since the "business or job" exclusion was contained in a section of the policy captioned, "LOSSES WE WILL NOT PAY FOR", its intent clearly was to exclude coverage in certain situations rather than to provide coverage. In Carrier v. Reliance Insurance Company, 99-2573, p. 6 (La.4/11/00), 759 So.2d 37, 40, the Louisiana Supreme Court concluded the lower courts erred in holding that UM coverage existed because the plaintiff qualified as an insured under an exception to an exclusion contained in a policy endorsement. In rejecting this rationale, the Supreme Court stated, "an exception to an exclusion cannot be the basis for an inclusion within policy coverage of a person who does not qualify as an insured under the policy." Carrier, 99-2573 at p. 6, 759 So.2d at 40. In reaching a similar conclusion in Magnon[5], 98-2822 at p. 8, 739 So.2d at 198, the Supreme Court explained that "[t]o hold otherwise would defeat the intent of the parties by treating exclusions as inclusions." Thus, Davenport's reliance in this case upon his exemption from the "business or job" exclusion as a basis for coverage is unwarranted.
In the alternative, plaintiffs argue the "regular use" and "business or job" exclusions are ambiguous, and must be construed in favor of coverage. In so arguing, they do not contend the language of either exclusion is unclear in itself. *103 Rather, plaintiffs maintain the two provisions are ambiguous and contradictory when read together. We disagree.
Ambiguous provisions in an insurance policy generally are construed against the insurer in favor of finding coverage. See La. C.C. art.2056; Carrier, 99-2573 at p. 12, 759 So.2d at 43. However, the rules of contractual interpretation do not authorize a perversion of the words of the policy or the exercise of inventive powers to create an ambiguity where none exists. Cadwallader v. Allstate Insurance Company, 02-1637, pp. 3-4 (La.6/27/03), 848 So.2d 577, 580.
Our review indicates the applicable exclusions are not unclear, contradictory, or ambiguous, either within themselves or when considered together. When an insurance policy contains multiple exclusions, each by its nature is designed to cover different situations, some of which may be intended to apply to the named insureds whereas others may not. The intent of the "business or job" exclusion in this case appears to be to prevent coverage without payment of premiums to anyone, other than the named insureds or resident relatives, using a non-owned car in a business or job. The fact that the exclusion exempts the named insureds from its scope does not somehow make it contradictory to the "regular use" exclusion. It merely means there was no intent to apply the "business or job" exclusion to the named insureds. See Magnon, 98-2822 at p. 8, 739 So.2d at 197.
Our reading of the "regular use" and "business or job" exclusions in conjunction with one another indicates they provide the named insureds with UM/UIM coverage when using a non-owned car in a business or job, except in situations where the non-owned car is one regularly used by them. We see no ambiguity or inconsistency in this contractual scheme, which is clearly set forth by the exclusions at issue. Plaintiffs' arguments attempt to create an ambiguity where none exists.
Furthermore, plaintiffs' assertion that Davenport personally believed the Prudential policy provided him with UM/UIM coverage while using his company van does not lend any support to their position. When the provisions of an insurance policy are clear and lead to no absurd results, parol evidence may not be introduced to contradict the policy's clear meaning. Peterson v. Schimek, 98-1712, p. 9 (La.3/2/99), 729 So.2d 1024, 1031. Thus, since the policy provisions were clear in this case, no parol evidence could be considered to alter their meaning.

Conclusion
For the reasons assigned, the judgment of the trial court dismissing plaintiffs' suit on the grounds that the policy's "regular use" exclusion barred coverage in this case is affirmed.[6] All costs of this appeal are assessed to plaintiffs.
AFFIRMED.
NOTES
[1] Plaintiffs later filed a motion dismissing Bellsouth from the suit, without prejudice, while reserving all rights against Prudential.
[2] The policy defined a "non-owned car" as "a car which is not owned by or registered in the name of you or a household resident." Moreover, a van is included in the policy definition of "car".
[3] The policy states that "[y]ou or your means the person shown as the named insured on the Declarations of this policy, and your spouse, if he or she lives in your household."
[4] The liability portion of the Prudential policy contains an almost identical "regular use" exclusion. Under that provision, the policy also would not have provided liability coverage for Davenport, in the event that he had been at fault in causing the accident.
[5] Magnon is one of the cases relied upon by the trial court in its written reasons for judgment. Plaintiffs argue the trial court's reliance on this case was misplaced because it dealt with whether the plaintiff was an insured under his employer's commercial general liability policy, rather than under his own personal UM/UIM carrier, as in the present case. Regardless, this distinction does not affect Magnon's authority for the general proposition that exclusions cannot serve as the basis for extending coverage not otherwise provided by the policy.
[6] Plaintiffs do not argue on appeal that the policy's "regular use" exclusion violated public policy, although the trial court specifically rejected such a contention in its written reasons for judgment. In any event, the jurisprudence indicates such exclusions are not violative of public policy. See Dardar v. Prudential Property & Casualty Insurance Co., 98-1363, (La.App. 1st Cir.6/25/99), 739 So.2d 330, writ denied, 99-2196 (La.11/12/99), 750 So.2d 195; St. Pierre v. Permanent General Assurance, 02-0497 (La.App. 3rd Cir.10/30/02), 829 So.2d 1185; Kerner v. Laballe, 560 So.2d 571 (La.App. 5th Cir.1990); Phillips v. Barraza, 349 So.2d 347 (La.App. 4th Cir.1977).