# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**16-692**


**NADDIA MELDER, ET UX.**

**VERSUS**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, ET AL.**


**\*\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 234,239
HONORABLE PATRICIA KOCH, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHANNON J. GREMILLION
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


**AFFIRMED IN PART; RENDERED IN PART.**

Roy S. Halcomb, Jr.
Broussard, Halcomb & Vizzier
P. O. Box 1311
Alexandria, LA 71309
(318) 487-4589
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Naddia Melder
    Randel Melder

Joe Payne Williams
Williams Family Law Firm, L.L.C.
Post Office Box 15
Natchitoches, LA 71458-0015
(318) 352-6695
COUNSEL FOR DEFENDANT/APPELLEE:
    Louisiana Farm Bureau Casualty Insurance Company

Bonita K. Preuett-Armour
Armour Law Firm
P. O. Box 710
Alexandria, LA 71309
(318) 442-6611
COUNSEL FOR DEFENDANT/APPELLEE:
    State Farm Mutual Automobile Insurance Company

**GREMILLION, Judge.**

Naddia and Randel Melder appeal the trial court's judgment finding that the defendant-appellee, Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau), did not provide uninsured motorist (UM) coverage in Naddia's favor following a motor vehicle accident. For the following reasons, we affirm in part and render in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Naddia Melder was injured in a two-car accident in March 2007. Naddia was operating a 2006 Nissan pickup truck owned by her employer, Grimes Industrial Supply. The other vehicle involved in the accident was underinsured, and UM coverage on the Grimes vehicle had been rejected. The Melders, therefore, filed a claim against their own UM carrier, Farm Bureau.

Farm Bureau filed a motion for summary judgment, which was denied. The parties submitted the matter to the trial court after stipulating to certain facts. The trial court rendered a judgment in July 2016, denying the Melders' claim for UM coverage. The Melders now appeal. Although plaintiffs did not assign any errors in their brief, they framed the issues as follows:[1]

1. Is Farm Bureau's regular use exclusion contrary to and in violation of the UM statute and therefore unenforceable? [The trial court erred in finding the regular use exclusion applied when the exclusion is contrary to the UM statute.]

2. In the alternative, assuming Farm Bureau's regular use exclusion is enforceable, which is denied, does it apply given the fact that the pickup being driven by Ms. Melder was furnished to her solely for the use of her employer, and not for the use of Ms. Melder? [If the regular use exclusion applies, the trial court erred in finding it applied to Naddia who was driving a vehicle that was solely for the use of her employer.]

3. Is Farm Bureau liable for penalty damages and attorney fees for failing to pay, within thirty days as required by law, the med

---

[1] We will substitute the "ISSUES" portion of the plaintiffs' brief for the assignments of error. We have noted in brackets the assignments of error that the Melders should have included in their brief.

pay benefits which Farm Bureau admitted it owed and/or for failing to pay UM benefits based on Farm Bureau's misinterpretation of its policy? [The trial court erred in failing to award penalty damages and attorney fees because Farm Bureau refused to timely pay the med-pay benefits.]

## DISCUSSION

### *Validity of the Exclusion*

Whether an insurance policy provides coverage or an exclusion prohibits it is a question of law, which we review de novo. *Thibodeaux v. Living Waters Cmty. Church*, 08-1064 (La.App. 3 Cir. 3/4/09), 5 So.3d 1007, *writ denied*, 09-749 (La. 5/22/09), 9 So.3d 145. The Melders argue that the exclusion found in Farm Bureau's policy does not apply because the provision violates La.R.S. 22:1295.

The applicable portion of the Farm Bureau policy reads as follows:

Coverage U- Uninsured Motorist (Damages for Bodily Injury)

To pay all sums, except punitive and/or exemplary damages, which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury" sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured vehicle.

. . . .

The term "uninsured or underinsured automobile" shall not include:
(1)     An owned automobile or an automobile furnished for the regular use of the named insured or a relative[.]

The Melders argue that Farm Bureau's "regular use" exclusion is contrary to the legislation found in La.R.S. 22:1295(1)(e), because the legislation does not specifically note the "regular use" exclusion. Louisiana Revised Statutes 22:1295(1)(e) states:

The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including the resulting death of an insured, while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a

2

claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy. This provision shall not apply to uninsured motorist coverage provided in a policy that does not describe specific motor vehicles.

The Melders claim that if the legislature wanted to include the regular use exclusion, it could have easily done so by adding the exclusion language. The Melders refer to an Illinois statute, §215 ILCS 5(143)(a)(emphasis added), as an illustration:

> Uninsured motor vehicle coverage does not apply to bodily injury, sickness, disease, or death resulting therefrom, of an insured while occupying a motor vehicle owned by, *or furnished or available for the regular use of the insured*, a resident spouse or resident relative, if that motor vehicle is not described in the policy under which a claim is made or is not a newly acquired or replacement motor vehicle covered under the terms of the policy.

While we appreciate the plaintiffs' argument that as a policy matter, UM coverage is person-specific as opposed to vehicle-specific, it has long been held that a regular use exclusion is not contrary to the public policy of this state. In *Howell v. Balboa Insurance Co.*, 564 So.2d 298, 301 (La.1990), the supreme court stated: "We expressly hold that UM coverage attaches to the person of the insured, not the vehicle, and that any provision of UM coverage purporting to limit insured status to instances involving a relationship to an insured vehicle contravenes LSA-R.S. 22:1406(D)."

However, in *Magnon v. Collins*, 739 So.2d 191 (La. 7/7/99), the supreme court clarified that *Howell* applies only to a person who is a liability insured. "As such, any determination of whether a plaintiff is entitled to UM benefits must follow a determination that the plaintiff is an insured for purposes of auto liability insurance coverage." *Id.* at 196. Accordingly, courts have held that insurers can exclude an insured from UM coverage in the same manner that the insured would be excluded under liability insurance. *See Mills v. Hubbs*, 597 So.2d 87 (La.App.

3

4 Cir.), *writ denied*, 600 So.2d 677 (La.1992); *Zanca v. Breaux*, 590 So.2d 821 (La.App. 4 Cir. 1990); *Kerner v. Laballe*, 560 So.2d 571 (La.App. 4 Cir. 1991); and, *Davenport v. Prudential Prop. & Cas. Ins. Co.*, 03-2593 (La.App. 1 Cir. 10/29/04), 897 So.2d 98, *writ denied*, 04-2900 (La. 2/4/05), 893 So.2d 882.

Insurance companies can limit coverage, including coverage of non-owned vehicles. *Magnon*, 739 So.2d 191.

> The purpose of the regular use exclusion is to protect an insurance company against double coverage when a premium has been paid on only one vehicle. If the insured has access to a second vehicle furnished for his regular use, the insurance company can rightfully require that a premium be paid for the insured's use of the second vehicle.

*Romano v. Girlinghouse*, 385 So.2d 352, 355 (La.App. 1 Cir. 1980).

The courts of this state have regularly recognized the public policy of having employers insure the vehicles which their employees regularly use, because an employee's personal insurance policy is not intended to provide insurance coverage for a vehicle regularly used by an employee in employment situations. *See Davenport*, 897 So.2d 98. Accordingly, this assignment of error is without merit.

## *Factual finding that plaintiff had the regular use of the vehicle*

Alternatively, the Melders argue that the pickup truck was furnished for the use of Naddia's employer rather than for Naddia. The trial court succinctly stated the relevant and undisputed facts:

> Ms. Melder was employed by Grimes Industrial on or about January 2, 2007 and was supplied a vehicle, 2006 Nissan Frontier, to make her sales calls. Although she was only employed a few short[] weeks before this accident, she did prove to her employers that she was responsible, and they allowed Ms. Melder to take the work vehicle home.
>
> Initially the Grimes vehicle would be parked each day at the business with Ms. Melder using her own personal vehicle for travel to work from home and then at work she used the Grimes vehicle.

4

Ms. Melder reported that she used the 2006 Nissan Frontier, the same vehicle each day, for her business calls/stops. That same vehicle was also used by others to do business calls or deliveries. However just a couple weeks before the accident, Ms. Melder was allowed to take the vehicle home. Even though she had the vehicle at her home, Ms. Melder began each day at the Grimes business office departing from there for her sales calls/stops/deliveries. Ms. Melder stated that it was made clear to her that the vehicle was not for personal use and she obeyed those rules. She mentioned in her deposition the responsibility of needing to run personal errands required that she retrieve her own personal vehicle before doing any personal errands.

. . . .

The current [] facts are clear that Ms. Melder, although employed just a few short weeks, was provided a vehicle by her employer. Initially the vehicle was used on occasion by others, however within a few weeks of employment and a couple of weeks prior to the accident, Ms. Melder's employer allowed Ms. Melder to take the vehicle home and it became a vehicle used exclusively by Ms. Melder for her regular use – daily sales travel.

A vehicle that is furnished for "regular use" has been defined as a vehicle that "is provided, supplied or afforded to the individual according to some established rule or principle or used in steady or uniform course, practice or occurrence as contrasted with being furnished for use only on casual, random, unpredictable or chance occasions." *Jones v. Youngblood*, 50,115, pp. 3-4 (La.App. 2 Cir. 9/30/15), 180 So.3d 455, 457; *see also Whitham v. La. Farm Bureau Cas. Ins. Co.*, 45,199 (La.App 2 Cir. 4/14/10), 34 So.3d 1104.

We find no error in the trial court's finding that Naddia had regular use of the Grimes pickup truck. The accident occurred while Naddia was regularly using her employer's vehicle in the course and scope of her work duties. The Melders attempt to draw a distinction between the vehicle being "furnished to her solely for the use of her employer, and not for her personal use." This distinction fails. In a case with facts identical to this one, we negated the idea that the employer's disallowance of the company vehicle for personal matters means the vehicle was

5

not "regularly used," because the vehicle was only used for the benefit of the employer. *See Gray v. Am. Nat'l Prop. & Cas. Cos,* 07-415 (La.App. 3 Cir. 10/3/07), 966 So.2d 1237. The regular use exclusion clearly applies to Naddia's use of the Grimes company vehicle, as it was being customarily used throughout the day for business purposes. This assignment of error is without merit.

### *Med Pay Benefits/Penalties & Attorney Fees*

The trial court did not address the issue of penalty damages and attorney fees. Therefore, we will presume that the trial court denied plaintiffs any penalties or attorney fees pursuant to La.R.S. 22:1892. *See Moore v. Moore,* 12-959 (La.App. 3 Cir. 4/10/13), 116 So.3d 18, *writ denied,* 13-1065 (La. 6/21/13), 118 So.3d 421. Louisiana Revised Statutes 22:1892 states in pertinent part:

> A.(1) All insurers issuing any type of contract, other than those specified in R.S. 22:1811, 1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The insurer shall notify the insurance producer of record of all such payments for property damage claims made in accordance with this Paragraph.
>
> . . . .
>
> B.(1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) of this Section, respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) of this Section when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs. Such penalties, if awarded, shall not be used by the insurer in computing either past or

6

prospective loss experience for the purpose of setting rates or making rate filings.

Melder made written demand for payment under the UM policy and medical payment (med-pay) benefits by letter dated August 22, 2007, which was received by Farm Bureau on August 24, 2007. Farm Bureau paid the med-pay limit of $5,000.00 on September 25, 2007, one day late. Farm Bureau provided no compelling reason for its failure to timely distribute med-pay benefits to Melder, and the validity of the claim was not disputed. Therefore, it was arbitrary, capricious, and without probable cause on Farm Bureau's part to delay beyond thirty days in making payment to Melder. *See Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 08-453 (La. 12/2/08), 999 So.2d 1104. Pursuant to the statute, Farm Bureau is responsible for penalty damages in the amount of $2,500.00 which is half of the undisputed amount it failed to pay, i.e., $5,000.00. Additionally, pursuant to La.R.S. 22:1892(B)(1), we award $3,500.00 in attorney fees.

## CONCLUSION

The judgment of the trial court in favor of the defendant-appellee, Louisiana Farm Bureau Casualty Insurance Company, is affirmed as to the denial of UM coverage. We render judgment of $2,500.00 for penalty fees and $3,500.00 for attorney fees in favor of the plaintiffs-appellants, Naddia and Randel Melder. Costs of this appeal are assessed equally between the parties.

**AFFIRMED IN PART; RENDERED IN PART.**

7