# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-532


EBONY S. POOLE

VERSUS

DAVID MATTHEW BUYS, ET AL.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 18-C-0987-B
HONORABLE A. GERARD CASWELL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN E. CONERY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, Van H. Kyzar, and Sharon Darville Wilson, Judges.


**MOTION TO DISMISS DENIED.**
**REVERSED AND REMANDED.**

**Donald F. de Boisblanc**
**410 South Rampart Street**
**New Orleans, Louisiana 70112**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Ebony S. Poole**


**Kenny L. Oliver**
**Oliver & Way**
**Post Office Box 82447**
**Lafayette, Louisiana 70598-2447**
**(337) 988-3500**
**COUNSEL FOR DEFENDANT-IN-RECONVENTION/APPELLEE:**
**Louisiana Farm Bureau Mutual Insurance Company**


**Charles Benjamin Landry**
**1309 Lafayette Street**
**Lafayette, Louisiana 70501**
**(337) 232-9806**
**COUNSEL FOR PLAINTIFF-IN-RECONVENTION/APPELLANT:**
**David Matthew Buys**

**CONERY, Judge.**

The appellant, Matt Buys, sought recovery from Louisiana Farm Bureau Casualty Insurance Company under the underinsured/uninsured motorist coverage of his automobile liability policy for damages sustained in an automobile accident. Farm Bureau filed a motion for summary judgment alleging that the subject policy excluded coverage as Mr. Buys was driving a non-listed vehicle owned by his girlfriend, a household resident. The trial court entered summary judgment in favor of Farm Bureau. Mr. Buys appeals. For the following reasons, we deny Farm Bureau's motion to dismiss appeal and, on the merits, reverse the summary judgment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

At the time of the subject November 5, 2017 automobile accident, Mr. Buys was driving a 2013 Nissan Altima owned by his girlfriend, Courtney Brown. He was doing so due to a mechanical issue with his own vehicle, a truck. While traveling in the left lane in order to pass a vehicle, Mr. Buys was struck by an oncoming vehicle driven by Ebony Poole. Mr. Buys allegedly sustained severe and debilitating injuries as a result of the accident.

Ms. Poole filed the initial suit in this matter in March 2018, naming as defendants Mr. Buys and his insurer, Farm Bureau, as well as Ms. Brown and her insurer, State Farm Mutual Automobile Insurance Company (State Farm). Ms. Poole sought damages she alleged resulted from Mr. Buys' negligent operation of Ms. Brown's Nissan.[1]

Mr. Buys and Ms. Brown filed a reconventional demand in July 2018, alleging that it was Ms. Poole's negligence that caused the accident and noting that

_____

[1] Ms. Poole's suit against Ms. Brown and State Farm was dismissed following settlement of the claim.

Ms. Poole was cited for operating her vehicle with no headlights after dark. The demand listed Ms. Poole, her insurer Progressive Security Insurance Company (Progressive), Ms. Brown, her insurer, State Farm, and Farm Bureau as defendants. Although Farm Bureau provided insurance for Mr. Buys, the vehicle listed on the Farm Bureau policy, a 2011 Chevrolet Silverado truck owned by Mr. Buys, was not involved in the accident. Mr. Buys and Ms. Brown, however, alleged that the Farm Bureau policy provided uninsured/underinsured motorist coverage for both collision damages to Ms. Brown's vehicle and to Mr. Buys. Mr. Buys' injuries purportedly exceed all available insurance coverage.

In its answer to the reconventional demand, Farm Bureau acknowledged that it issued a policy to Mr. Buys but denied liability thereunder. Farm Bureau filed an initial motion for summary judgment in January 2020, first alleging that Mr. Buys and Ms. Brown "were residents of the same household and the 2013 Nissan Altima was furnished or available for Buys' regular use." Farm Bureau contended that its policy covering Mr. Buys' truck provided that "the term 'uninsured or underinsured automobile shall not include: (a) an owned automobile or an **automobile furnished for the regular use of the named insured or a relative**; ...." (Emphasis added.) The policy further specifically excluded "uninsured/underinsured motorist coverage (Coverage U) to '**any automobile or trailer owned by or furnished or available for the regular use of the named insured or a resident of the insured's household if that automobile is not described on the Declarations.**'" (Emphasis added.) Farm Bureau alleged that this definition and exclusion are pertinent as Ms. Brown's Nissan was furnished or available for Mr. Buys' regular use and was "<u>not</u> described" on the declaration page of the policy.

2

Mr. Buys opposed that initial motion for summary judgment and argued that there were genuine issues of material fact regarding whether Ms. Brown's Nissan was available for Mr. Buys' regular use. Acknowledging his deposition statements that he, at times, used the Nissan, Mr. Buys noted that he had explained that his use on the date of the accident was due solely to mechanical issues with his own vehicle, and that Ms. Brown confirmed in her affidavit that each of them used their own vehicles regularly. His use of her vehicle on that day was extraordinary. The trial court denied that initial motion for summary judgment following a March 2, 2020 hearing.

Farm Bureau followed that denial with a second motion for summary judgment on March 24, 2020, contending the policy's "Coverage U, Uninsured Motorist (Damages for bodily injury)" did not afford coverage as Ms. Brown's Nissan was not listed on the declaration sheet of Farm Bureau's policy issued to Mr. Buys. Farm Bureau relied on the policy provision indicating that "[t]he term insured automobile … shall not include: (1) any automobile or trailer owned by a resident of the same household as the named insured[.]" Farm Bureau additionally noted that Coverage U excludes UM coverage:

> (b) to any automobile or trailer owned by or furnished or available for the regular use of the named insured or a resident of the insured's household if that automobile is not described on the Declarations.

Farm Bureau did not focus on the "regular use" aspect of exclusion "(b)" but instead focused on the fact that the Nissan was owned by Ms. Brown, a resident of the insured's house, and that the vehicle was not described on the declaration sheet.

Finally, Farm Bureau noted that the policy limits coverage for the use of "other automobiles" does not apply "to any automobile owned by or furnished for regular use to either the name insured or a member of the same household[.]" Reasoning that the Nissan belonged to Ms. Brown, a resident of Mr. Buys'

3

household, Farm Bureau sought summary judgment indicating that the policy does not provide UM coverage to Mr. Buys "for the above described accident as he was driving a vehicle not described on the policy[.]"[2]

In opposition, Mr. Buys again challenged Farm Bureau's interpretation of the policy and asserted that he was an insured for UM purposes regardless of the vehicle driven. He did so under that portion of the policy providing coverage for payment of all sums "which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured automobile because of bodily injury … sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile." Mr. Buys pointed out that he was clearly the named insured on the Farm Bureau policy and was injured in an automobile accident caused by the fault of another while the tortfeasor, Ms. Poole, was driving an underinsured vehicle. Mr. Buys maintains that ownership of the vehicle driven by him at the time of the accident is irrelevant.

Following a June 2020 hearing, the trial court granted Farm Bureau's motion for summary judgment, finding "that the Exclusion does apply to prevent additional UM Coverage for Mr. Buys on the Farm Bureau policy."

Mr. Buys appealed the resulting July 1, 2020 judgment and argues to this court that:

> 1.     The District Court erred when it granted the Motion for Summary Judgment filed by Louisiana Farm Bureau and ruled that the named insured, David Matthew Buys, was not insured for injuries caused by an uninsured/underinsured motorist in the accident which is the subject of this case.

---

[2] Farm Bureau also argued in the motion for summary judgment that the Nissan did not fit the policy's definition of a "temporary substitute vehicle." That issue was resolved in earlier proceedings and is not now before the Court.

4

2.     The District Court erred when it "interpreted" the Louisiana Farm Bureau uninsured/underinsured motorist policy to require that a named insured establish, as a prerequisite to coverage, that he was injured "while occupying an insured automobile," a condition which only applies to UM claims by "all other persons" and not to claims by a named insured.

## LAW AND DISCUSSION

*Motion to Dismiss Appeal*

At the commencement of oral argument held in this matter, Farm Bureau sought to dismiss Mr. Buys' appeal, noting that it had tendered its policy limits in light of the supreme court's recent release of *Higgins v. Louisiana Farm Bureau Cas. Ins. Co.*, 20-1094 (La. 3/24/21), _ So.3d _ (2021 WL 1115393). That ruling is discussed further below. Counsel for Mr. Buys objected to the request for dismissal and urged his position that, notwithstanding Farm Bureau's tender, he was entitled to reversal of the subject summary judgment entered in Farm Bureau's favor. Counsel for Mr. Buys further indicated that, in light of *Higgins*, he has amended the petition below to pursue penalties and attorney fees. Given that objection by the appellant, we deny the motion to dismiss.

*Summary Judgment – Standard of Review*

Louisiana Code of Civil Procedure Article 966(A)(3) requires a court to grant a motion for summary judgment "if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law." On appeal, a trial court's ruling on a motion for summary judgment is reviewed de novo. *Bufkin v. Felipe's La., LLC*, 14-288 (La. 10/15/14), 171 So.3d 851. We therefore turn to consideration of Farm Bureau's motion for summary judgment under the de novo standard of review.

5

*Uninsured/Underinsured Coverage*

Louisiana Revised Statutes 22:1295(1)(a)(i) provides that "[n]o automobile liability insurance" policy shall be issued in the state unless it provides UM coverage for persons injured in accidents involving "owners and operators of uninsured or underinsured motor vehicles." The statute reflects a strong public policy of allowing innocent automobile accident victims to fully recover their damages from their UM motorist coverage when their injuries are caused by a tortfeasor who is not adequately covered by liability insurance. *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945 (citing *Duncan v. U.S.A.A. Ins. Co.*, 06-0363 (La. 11/29/06), 950 So.2d 544).

As applicable to Farm Bureau's motion for summary judgment and the parties' respective arguments, Mr. Buys' subject policy provides:

### PART IV. PROTECTION AGAINST UNINSURED/UNDERINSURED MOTORIST

**Coverage U, Uninsured Motorist (Damages for bodily injury)**

To pay all sums, except punitive and/or exemplary damages, which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called bodily injury, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile.

**Definitions**

The definitions under PART I. LIABILITY, except the definition of insured, apply to Coverage U, and under coverage U:

**insured** means:

(a)    the named insured and any relative while a resident of the named insured's household;

(b)    any other person *while occupying an insured automobile*; and

    . . . .

6

**insured automobile** means:

(a) *An automobile described on the Declarations for which a specific premium charge indicates that coverage is afforded*;

. . . .

(d) *a non-owned automobile while being operated by the named insured.*

*The term insured automobile* includes a trailer while being used with an automobile described in (a), (b), (c) or (d) above, but *shall not include*:

(1) *any automobile or trailer owned by a resident of the same household as the named insured*;

**. . . .**

**uninsured or underinsured automobile** includes an automobile with respect to which there is bodily injury liability applicable at the time of the accident but the company writing the same becomes insolvent after such accident. Also, uninsured automobile includes a trailer of any type and means:

. . . .

(c) an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of an accident, as agreed to by the parties and their insurers or as determined by final adjudication.

The term uninsured or underinsured automobile shall not include:

(a) *an owned automobile or an automobile furnished for the regular use of the named insured or a relative*;

. . . .

**Exclusions**

This policy does not apply under Coverage U:

. . . .

7

> (b)  *to any automobile or trailer owned by or furnished or available for the regular use of the named insured or a resident of the named insured's household if that automobile is not described on the Declarations.*

(Emphasis added.)

Farm Bureau acknowledges that Mr. Buys is an insured for UM purposes, but argues that the policy specifically excludes coverage for this accident. Referencing the definition of an "insured automobile," Farm Bureau argues that, although Mr. Buys is the named insured, he does not have coverage while driving "a non-owned auto owned by a resident of the same household if it is not described on the Declarations." It contends that this is "a standard exclusion contained in practically all UM policies to prevent a person from purchasing only one UM policy with the intent of having it cover unlimited autos in the same household."

We disagree. The policy readily describes Mr. Buys as an "insured," as that term is plainly defined as: "(a) the named insured and any relative while a resident of the named insured's household[.]" *See also Higgins*, _ So.3d _. Application of the clear wording of that provision undermines the necessity of resorting to the secondary, "(b)," definition urged by Farm Bureau. Mr. Buys is, in fact, the named insured on the Farm Bureau policy and is afforded Coverage U unless otherwise excluded. It is only definition "(b)" which is applicable to "any other person" that requires occupancy in "an insured vehicle[.]"

Turning to the Coverage U's "Exclusions" section, Farm Bureau additionally suggests that since Mr. Buys was driving Ms. Brown's Nissan, a non-listed vehicle, the policy's "**Exclusions**" preclude coverage as "the policy does not apply under Coverage U: … (b) to any automobile or trailer owned by or furnished or available for the regular use of the named insured's household if that automobile is not described on the Declarations." Farm Bureau does not focus on the fact that

8

the vehicle described in definition "(b)" must be "furnished or available for the *regular use*" of the named insured. (Emphasis added.) Farm Bureau instead summarily asserts that no genuine issues of material fact remain. Farm Bureau relies on two cases, *Melder v. State Farm Mut. Auto. Ins. Co.*, 16-692 (La.App. 3 Cir. 12/14/16), 208 So.3d 416, *writ granted*, 17-95 (La. 4/7/17), 218 So.3d 107[3] and *Gray v. American Nat'l Prop. & Cas. Co.*, 07-415 (La.App. 3 Cir. 10/3/07), 966 So.2d 1237.

Following the parties' submission of briefs to this court, however, the Louisiana Supreme Court rendered *Higgins*, _ So.3d _, speaking definitively on the exact "regular use" exclusion relied on by Farm Bureau and specifically overruled both *Melder* and *Gray*. Its reasoning in doing so is determinative in this matter as well.

In *Higgins*, the plaintiff sought recovery under his personal Farm Bureau policy following an automobile accident in which he was operating his employer's vehicle. Farm Bureau denied coverage, citing the "regular use" exclusion contained within the policy's Coverage U section. As in the present case, the exclusion indicated that UM coverage does not apply: "(b) to any automobile or trailer owned by or furnished or available for the regular use of the named insured or a resident of the named insured's household *if that automobile is not described on the Declarations*." *Id.* at p. 2 (emphasis added).[4]

The supreme court observed the public policy strongly favoring UM coverage and the liberal construction afforded La.R.S. 22:1295. *Higgins*, _ So.3d

---

[3] Following the supreme court's granting of the writ application in *Melder*, the parties settled, and the case was dismissed. *See Higgins*, _ So.3d at _ n.8.

[4] As in this case, the liability portion of the Farm Bureau policy also contained a "regular use" exclusion, providing: "(d)(1) the insuring agreement does not apply to any automobile owned or furnished for regular use to either the named insured or a member of the same household."

_ (citing *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191; *Taylor v. Rowell*, 98-286 (La. 5/18/99), 736 So.2d 812; *Howell v. Balboa Ins. Co.*, 564 So.2d 298 (La.1990)). It recognized that, in light of the Farm Bureau policy "regular use" exclusion, UM coverage was contractually provided for, but that "coverage *in this instance* is excluded[.]" *Id.* at _ (emphasis in the original). Like Mr. Buys in this case, however, Mr. Higgins, was "the named insured in his personal automobile insurance policy" and therefore "*obviously* an 'insured' person under the policy." *Id.* at _ (footnote omitted). Recognizing that the exclusion was "vehicle-based," the supreme court explained that such an exclusion "cannot be used to artificially limit the definition of the 'insured' for purposes of UM coverage in a personal automobile policy where that coverage has not been declined, but is expressly provided." *Id.* at _.

The supreme court reasoned, instead, that Farm Bureau's construction of the exclusion "would allow insurers to write vehicle-based exclusions into the liability section of personal automobile insurance policies and in turn limit UM coverage for the insured, so as to render meaningless the limited exceptions to UM coverage allowed by the legislature." *Id.* at _. The supreme court continued and referenced *Melder*, a case relied on by Farm Bureau in this case, in recognizing that "lower courts have at times broadly pronounced that insurers 'can exclude an insured from UM coverage in the same manner that the insured would be excluded under liability insurance[.]'" *Higgins*, _ So.3d at _ (quoting *Melder*, 208 So.3d at 420). Maintaining that jurisprudential principle, the supreme court stated, would be "inconsistent" with both La.R.S. 22:1295 and supreme court jurisprudence "interpreting that statute as requiring that UM coverage follow the person, not the vehicle." *Id.* at _ (citing *Bernard v. Ellis*, 11-2377 (La. 7/2/12), 111 So.3d 995;

10

*Filipski v. Imperial Fire & Cas. Ins. Co.*, 09-1013 (La. 12/1/09), 25 So.3d 742; *Howell v. Balboa Ins. Co.*, 564 So.2d 298 (La.1990)).

While acknowledging a "regular use" exclusion's legitimate purpose of protecting an insurer from "'double coverage when a premium has been paid on only one vehicle[,]'" the supreme court considered that purpose in light of the public policy of allowing full recovery for innocent automobile victims who suffer damages caused by an uninsured/underinsured tortfeasor as reflected in La.R.S. 22:1295(1)(a)(i).[5] *Higgins* at _ (quoting, in part, *Romano v. Girlinghouse*, 385 So.2d 352 (La.App. 1 Cir. 1980)). The purpose of the exclusion, the supreme court concluded, must yield to the statutory constraint of the UM provision. Notably, La.R.S. 22:1295(1)(a)(ii) provides that a rejection or modification of UM coverage

---

[5] In pertinent part, Louisiana Revised Statutes 22:1295 provides:

> (1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, *for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death* resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized in this Section. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Section may exclude coverage for punitive or exemplary damages by the terms of the policy or contract. Insurers may also make available, at a reduced premium, the coverage provided under this Section with an exclusion for all noneconomic loss. This coverage shall be known as "economic-only" uninsured motorist coverage. Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.

(Emphasis added.)

11

limits "shall be made only on a form prescribed by the commissioner of insurance." *Id.*

Referencing its earlier jurisprudence, the supreme court remarked that the coverage mandated by La.R.S. 22:1295 "cannot be qualified by a requirement of relationship with an insured vehicle." *Id.* at _ (quoting *Howell*, 564 So.2d at 301). One limited exception, contained in La.R.S. 22:1295(1)(e), provides only that UM coverage does not apply to injury "while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a claim is made …." That limited exception, the supreme court explained, is "to keep vehicle owners from carrying UM coverage on only one of two or more *owned* vehicles, thus obtaining the benefit of UM coverage regardless of which vehicle they occupied, at the cost of only one UM policy.'" *Higgins*, _ So.3d at _ (quoting *Mayo v. State Farm Mut. Auto. Ins. Co.*, 03-1801, p. 6 (La. 2/25/04), 869 So.2d 96, 101).

Thus, the statutory exclusion of La.R.S. 22:1295(1)(e) "unambiguously applies only to 'vehicle[s] owned by the insured[.]'" *Higgins* at _. Given the strict construction afforded exceptions to the UM coverage provided by La.R.S. 22:1295, the supreme court reasoned "that Farm Bureau's policy impermissibly expanded the category of vehicles excluded from UM coverage beyond that which the UM statute allows." *Higgins*, _ So.3d at _. The supreme court correspondingly overruled appellate jurisprudence, including *Melder* and *Gray*, which "reached a different conclusion" upon presentation of similar facts. *Id.* at _ (overruling, e.g., *Melder*, 208 So.3d 416; *Gray*, 966 So.2d 1237; *Davenport v. Prudential Prop. & Cas. Ins. Co.*, 03-2593 (La.App. 1 Cir. 10/29/04), 897 So.2d 98, *writ denied*, 04-2900 (La. 2/4/05), 893 So.2d 882; *Peyton v. Bseis*, 96-0309 (La.App. 4 Cir.

8/21/96), 680 So.2d 81; and *Kerner v. Laballe*, 560 So.2d 571 (La.App. 5 Cir. 1990)).

That reasoning, and the supreme court's directive, is applicable to this case, one involving the same "regular use" exclusion analyzed in *Higgins*. Mr. Buys is the named insured on the policy, and Farm Bureau acknowledges that he secured UM coverage thereunder. Farm Bureau's reliance on the policy's "regular use" exclusion(s) therein is contrary to the requirements of La.R.S. 22:1295, the limited exclusions of La.R.S. 22:1295, and the supreme court's expression in *Higgins*. Accordingly, Farm Bureau's motion for summary judgment must be rejected.[6] We reverse the trial court's entry of summary judgment in Farm Bureau's favor and remand for further proceedings.

## DECREE

For the foregoing reasons, the Motion to Dismiss the Appeal is denied, and the trial court's July 1, 2020 judgment in favor of Louisiana Farm Bureau Casualty Insurance Company is reversed. This matter is remanded to the trial court for further proceedings. Costs of this proceeding are assigned to Farm Bureau.

**MOTION TO DISMISS DENIED.**
**REVERSED AND REMANDED.**

---

[6] This decision pretermits consideration of Mr. Buys' argument questioning whether genuine issues of material fact exist as to the availability of Ms. Brown's Nissan for his regular use.

13